### WARRIN CHINA & GLASS CO., Inc. v. PEDRICK.

United States District Court
S. D. New York.
Nov. 16, 1949.

Warner & Birdsall, New York City, J. E. Birdsall, New York City, of counsel, for plaintiff.

John F. X. McGohey, United States Attorney, New York City, John M. Cunneen, New York City, of counsel, for defendant.

GODDARD, District Judge.

This is a suit to recover the sum of $2.00 representing an excise tax alleged to

have been illegally and erroneously assessed and collected under Section 2400 of the Internal Revenue Code which was added by Section 552 of the Revenue Act of 1941, effective October 1, 1941, as amended by Section 310 of the Revenue Act of 1943, 26 U.S.C.A. § 2400. It is a test case.

The court makes the following *Findings of Fact:*

1. Warrin China & Glass Co., Inc. is, and was at the time hereinafter referred to, a New York corporation with its principal place of business in this district.

2. William J. Pedrick was at the time the tax return referred to below was made and the tax paid, and at the time that this action was commenced, the Collector of Internal Revenue for the Second District of the State of New York, and had his place of business and residence in the Southern District of New York.

3. On October 24, 1947, Warrin China & Glass Co., Inc. sold at retail a silver-plated glass pitcher having a retail price of $10.00 and, in accordance with the afore-mentioned Section 2400, collected from the purchaser 20% of the purchase price.

4. On or about November 3, 1947 plaintiff filed with William J. Pedrick, Collector of Internal Revenue, a retail dealer's excise tax return and paid to him the sum of $2.00 as the retail dealer's excise tax upon the sale of the silver-plated pitcher above referred to.

5. Thereafter the plaintiff repaid the sum of $2.00 to his customer.

6. On November 3, 1947 the plaintiff filed with the defendant a claim for the refund of said tax.

7. By letter dated March 30, 1948, the Commissioner of Internal Revenue notified the plaintiff that said claim for refund was rejected.

8. Neither the defendant nor the Collector of Internal Revenue has refunded to the plaintiff the said $2.00 or any part thereof.

9. Thereafter this action for refund was properly commenced against William J. Pedrick; and, upon his death, the present defendant, Rea Forham Pedrick, as Administratrix of the Estate of William J. Pedrick, deceased, was substituted as defendant.

10. The glass pitcher sold by the plaintiff was designed, sold, and used for the storage, service, and preparation of beverages and is a duplicate of Exhibit 2 in evidence.

11. The glass pitcher sold by the plaintiff was plated by the following process:

(a) A steel plate is etched with the design.

(b) A silver paste or flux is ground in a pharmacist's bowl. The paste consists of the following ingredients, mixed according to formula: beeswax and tallow, borax, powdered lead and powdered silver. To these ingredients, a thinner—turpentine—is added.

(c) This paste is then applied on the etched steel plate. The etched steel plate with the paste applied is then placed in a press with a piece of transfer tissue that is a special paper used in the silver deposit process. This tissue is pressed against the steel plate by a roller press which causes the transfer of the silver paste in design from the steel to the tissue.

(d) The tissue is then placed against the glass pitcher, rubbed smooth by hand and the design is transferred thereby from tissue to the surface of the glass pitcher.

(e) The tissue is then soaked with water and peeled from the pitcher, leaving affixed thereto the silver paste in design.

(f) The various designs on the pitcher are connected by a single track of paste, and the pitcher is then placed in a kiln.

(g) The kiln is fired and the heat removes the beeswax, tallow and thinner from the paste, leaving a metallic base of borax, powdered lead and powdered silver fused to the glass.

(h) The pitcher is then wired for contact and suspended in a plating tank where by an electrolytic method of plating a coating of pure silver is deposited on the metallic base.

(i) The resultant product, sterling silver, is buffed and then flash-plated electrolytically with a metal to prevent tarnish or corrosion.

12. The unornamented glass pitcher was not made by the plaintiff but was purchased from another manufacturer.

13. The sterling silver ornamentation was a filigree in the form of branches, leaves, and fruit that substantially covered the upper half the pitcher.

14. The cost of the glass pitcher to the plaintiff is approximately 78 cents; the cost of the silver which is applied is approximately the same; the cost of labor in applying the silver in the ornamental design is about two and one-half times the cost of the bare pitcher.

15. The terms "silver-plated flatware" and "silver-plated hollow ware" as used in said Section 2400 of the Internal Revenue Code do not include and are not intended to apply to articles made of glass.

### Conclusions of Law

1. The silver-plated glass pitcher sold by plaintiff was not taxable under Internal Revenue Code, Section 2400, as "silver-plated hollow ware".

2. The silver plated pitcher sold by plaintiff was taxable under Internal Revenue Code, Section 2400, as an article "ornamented, mounted, or fitted with precious metals or imitations thereof".

3. William J. Pedrick, Collector, lawfully collected $2.00 in taxes on the sale of plaintiff's pitcher.

4. Defendant is entitled to judgment on the merits, together with the costs and disbursements of this suit, and judgment may be entered accordingly.

The case presents two questions for determination:

One—A question of fact. Is the plaintiff's silver-plated glass pitcher "silver-plated hollow ware" referred to in Section 2400 [1] of the Internal Revenue Code, and taxable as such?

Two—A question of law. If not taxable as "silver-plated hollow ware", is the plaintiff's pitcher taxable as an "article" within the meaning of "articles made of, or ornamented, mounted or fitted with, precious metals or imitations thereof", as specified in Section 2400?

Section 320.35 of Treasury Regulations 51 [added by T.D. 5353, March 31, 1944], referring to Section 2400, said: "The terms 'flatware' and 'hollow ware' include all the articles commonly or commercially known and sold as such in the trade."

A number of expert witnesses in the trade were called by both the plaintiff and the defendant. The majority of them were men of long experience with well-known companies in the trade. After seeing and hearing them, I was fully convinced that the term "hollow ware" as used in the trade does not include articles made of glass.

The Congress and a government administrative agency have indirectly indicated their belief that "hollow ware" does not refer to articles made of glass. Although "hollow ware plated with previous metals" had already been exempted from price control by Amendment 12 to Supplementary Order 126 in 1945, the Price Administrator

---

1. The pertinent part of Section 2400 reads: "There is hereby imposed upon the following articles sold at retail a tax equivalent to 10 percentum [increased to 20 percentum by Section 302(a) of the Revenue Act of 1943] of the price for which so sold; All articles commonly or commercially known as jewelry, whether real or imitation; pearls, precious and semi-precious stones, and imitations thereof; *articles made of, or ornamented, mounted or fitted with, precious metals or imitations thereof;* watches and clocks and cases and movements thereof; gold, gold-plated, silver, or sterling silver flatware or hollow ware and *silver-plated hollow ware;* opera glasses; lorgnettes; marine glasses; field glasses; and binoculars. The tax imposed by this section shall not apply to any article used for religious purposes, to surgical instruments, to watches designed especially for use by the blind, to frames or mountings of spectacles or eye glasses, or to a fountain pen, mechanical pencil, or smoker's pipe if the only parts of the pen, the pencil, or the pipe which consist of precious metals are essential parts not used for ornamental purposes, or to buttons, insignia, cap devices, chin straps, or other devices prescribed for use in connection with the uniforms of the armed forces of the United States." [Italics supplied.]

saw fit to make an exemption for glassware plated with precious metals in Amendment 28 to Supplementary Order 126 on May 1, 1946. This indicated that he did not believe glassware was covered by the previous exemption for "hollow ware".

In the Tariff Act of 1930, the Congress referred to "hollow ware" in the section dealing with metal articles, Paragraph 339 of Schedule 3, 46 Stat. 590, 616, 19 U.S.C.A. § 1001, par. 339, but did not in the section dealing with glass articles, Paragraph 218 (f) of Schedule 2, 46 Stat. 590, 606, 18 U.S. C.A. § 1001, par. 218(f).

■ My conclusion is that the Congress did not intend the term "hollow ware" as used in said Section 2400 to cover glass ware.

However, I think that the Congress did intend that glassware ornamented with precious metal or imitations thereof be taxed under the general provisions of Section 2400.

What the Congress intended the words "articles made of, or ornamented, mounted or fitted with, precious metals or imitations thereof" as used in Section 2400 to mean, seems quite clear in the light of the history of the Act. The present Act is a development from a series of earlier Acts, the first of which was enacted in 1917. Chapter 63, Section 600(e) of this Act, 40 Stat. 300, 316 (1917), imposed a tax "upon any article commonly or commercially known as jewelry, whether real or imitation, sold by the manufacture, producer or importer, thereof, a tax equivalent to three per centum of the price for which so sold".

Jewelry alone was taxed under this statute.

Section 905 of the Revenue Act of 1918, 40 Stat. 1057, 1124 (1919), amended the 1917 Act. Besides continuing the basic tax on jewelry, it added another provision [2].

The specific exemption for surgical instruments from the general language indicates that the Congress intended "articles" to have a broader coverage than just purely decorative articles in the class of "jewelry" as the plaintiff suggests. If this very narrow construction were intended, there would be no need for this exemption.

Article 24 of the 1919 edition of Treasury Regulations 48 interpreted "articles" in part as follows: "Glassware, china, pottery, and like articles are only taxable if ornamented, mounted, or fitted with precious metals or imitations thereof."

Although the Congress amended this tax in 1921, 42 Stat. 227, 293 (1921), and in 1924, 43 Stat. 253, 324 (1924), it did not change the general language nor did it give any indication of disapproval of the administrative construction thereof which included glassware ornamented with precious metals or imitations thereof. Both amendments added exemptions [eyeglasses, spectacles, musical instruments, silver-plated flat tableware, articles used for religious purposes, articles sold for no more than $60 and watches for no more than $30] to the list of articles exempt from this tax but neither amendment exempted glassware. This increased list of exemptions was a further indication that the Congress had intended that "articles" should include more than purely decorative articles.

Nor did the Treasury change its interpretations. Article 24 of the 1921 edition of Regulations 48 was identical with the 1919 Regulation. In Article 25 of the 1924 edition of Regulations 48 the only change was the deletion of the word "only" from before the word "taxable". This tax was repealed in 1926, 44 Stat. 9 (1926).

2. Section 905 provided in part: "That on or after April 1, 1919, there shall be levied, assessed, collected, and paid (in lieu of the tax imposed by subdivision (e) of section 600 of the Revenue Act of 1917) upon all articles commonly or commercially known as jewelry, whether real or imitation; pearls, precious and semiprecious stones, and imitations thereof; articles made of, or ornamented, mounted or fitted with, precious metals or imitations thereof or ivory (not including surgical instruments); watches; clocks; opera glasses; lorgnettes; marine glasses; field glasses; and binoculars; upon any of the above when sold by or for a dealer or his estate for consumption or use * * *."

■ Section 605 of the Revenue Act of 1932, 47 Stat. 169, 261 (1932), created a manufacturer's excise tax using almost identical language as had been used in the 1924 Revenue Act. Since the only difference was in minor exemptions, it seems apparent that the Congress intended this law to be given the same broad interpretation that the 1924 Act had been given. Whenever a legislature has used a word or phrase in a statute in one sense and with one meaning, and subsequently uses the same word or phrase in legislating on the same subject matter, it will be understood as using it in the same sense and having the same meaning. Apfel v. Mellon, 1929, 59 App.D.C. 94, 33 F.2d 805; Marks v. United States, 1895, 161 U.S. 297, 16 S.Ct. 476, 40 L.Ed. 706. Accordingly, Article 31 of the 1932 edition of Regulations 46 did interpret the 1932 Act as including glassware ornamented with precious metals.

This Act was amended by Section 609 of the Revenue Act of 1934, 48 Stat. 680, 768 (1936). Again there was no indication of Congressional disapproval of the Treasury's interpretation. This Act was repealed in 1936 by Section 809 of the Revenue Act of 1936, 49 Stat. 1648, 1746 (1936).

Section 552 of the Revenue Act of 1941, 55 Stat. 687, 718 (1941), added Section 2400 to the Internal Revenue Code. The basic language of the statute was the same as the old statutes.

The Treasury Regulations again included glassware ornamented with precious metals as a taxable item in Section 320.33 of the 1941 edition of Regulations 51. Since 1918, when the words "articles, etc." were first used in these Acts, Treasury Regulations have so interpreted the words in question.

■ If a statute is ambiguous, administrative construction followed since its enactment is of great weight. Spring City Foundry Co. v. Comm. of Internal Revenue, 1934, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200.

■ Although the Congress has amended Section 2400 three times, it has never indicated any disapproval of the Treasury's interpretation of "articles * * * ornamented, mounted or fitted with precious metals or imitations thereof". Section 613, Revenue Act of 1942, 56 Stat. 798, 977 (1942); Section 310, Revenue Act of 1943, 58 Stat. 21, 69 (1944); Section 1, Act of August 11, 1945, 59 Stat. 532. Under the established rule, the Congress must be taken to have approved the administrative construction and thereby to have given it the force of law. Helvering v. R. J. Reynolds Tobacco Co., 1939, 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536.

The plaintiff cites C. G. Conn, Ltd., v. United States, 1927, 64 Ct.Cl. 230, in support of its contention that "articles" as used in the statute now under consideration could not include a silver-plated glass pitcher because such a pitcher is not purely decorative and is not sufficiently "like jewelry".

I think that the plaintiff's interpretation of this case is too narrow. In that case the Court of Claims, in considering the taxability of musical instruments, said: "Applying the well-known rule of statutory construction in cases involving such language, the word 'articles' must be held to include only articles as are similar in character, and designed for similar uses, as those articles which are specifically designated in the statute."

The Court of Claims there relied heavily on opinions by the Solicitor of Internal Revenue, Law Opinion No. 882, applying to coffins, and Solicitor's memorandum No. 2068, applying to phonographs and victrolas, which held that said articles were not similar in character or use to those which were specifically named in the statute. The court indicated that musical instruments were similar to phonographs and victrolas and not similar in size, weight, appearance or purpose to any article specially named in the statute. That court was construing Section 905(2) of the Revenue Act of 1921 [see supra], which is the ancestor of the present Section 2400 of the Internal Revenue Code. In applying the reasoning of the Conn case to the present statute, it must be borne in mind that the Congress has added to the statute there interpreted, and, in the statute now being construed, specifically designated "gold,

gold-plated, silver, or sterling flatware or hollow ware and silver-plated hollow ware".

The ornamented glass pitcher is similar in character and is designed for exactly the same uses as the "silver-plated hollow ware" that is specifically designated. The only difference between the silver-plated glass pitcher here involved and "silver-plated hollow ware" is that the former is made of glass while the latter is made of metal. The plaintiff admitted that the glass pitcher would be "hollow ware" if it were made of metal. It thus meets the test of the Conn case and is taxable thereunder.

In the Conn case, much weight was accorded to the fact that the ornamentation increased the utility of the articles under consideration and that its cost was an insignificant part of their total cost.

In deciding Marshall Field & Co. v. United States, 1931, 47 F.2d 401, 403, 71 Ct.Cl. 531, 536, the Court of Claims said:

"The Congress was enacting a luxury tax, imposing a tax upon an article which in its makeup was either composed of precious metals or had imposed upon it sufficient superfluous ornamentation to make it not only one of utility but adornment as well. * * * Such ornamentation singles the article out from the general character of such articles and attaches to it a superadded value, not in the way of utility, but strictly in the way and in the manner all jewelry attracts. It was upon an article made extravagent in cost by reason of such ornamentation that Congress levied the tax. The ordinary clock was not taxed and such specific articles of common use and usefulness were not taxed, except in instances when they fell within the class made of, or ornamented with precious metals, etc."

■ Plaintiff's pitcher clearly fits the description of a taxable "article" under the Field test. The addition of the silver to the glass increased the manufacturing cost of that pitcher more than fourfold; yet it did not increase the utility of the pitcher at all. The ornamentation was purely superfluous—making the pitcher an article "not only one of utility but adornment as well". As such, it brought the glass pitcher within the class that the Congress intended to tax.

■ I think that the test intended by the Congress is not whether the article itself is utilitarian, but whether the precious metal or imitation thereof on the article is utilitarian; i. e., whether the precious metal or imitation thereof was added because of its utility or solely for ornamentation. If it is added for the latter reason, the article is taxable.

Accordingly, judgment may be entered for the defendant.