EMPRESS STERLING Co., Plaintiff, Appellee and Appellant, *v.* SECRETARY OF THE TREASURY, Defendant, Appellant and Appellee.

No. 11373. Argued April 3, 1956.—Decided June 19, 1956.

*José Trías Monge, Attorney General (J. B. Fernández Badíllo, Acting Attorney General, on the brief) and Carlos N. Souffront, Assistant Attorney General, for defendant, appellant and appellee. Gutiérrez & Sánchez and C. Morales, Jr. for plaintiff and appellant.*

MR. CHIEF JUSTICE SNYDER delivered the opinion of the Court.

In 1951 and 1952 Empress Sterling Co. paid excise taxes totalling $4,302.12 on certain tableware, the containers therefor, and chinaware. The Secretary of the Treasury denied a petition for refund and the taxpayer filed suit in the Superior Court against the Secretary for the said refund. After a trial on the merits, the Superior Court entered a judgment ordering a refund of the taxes on the tableware and the containers, but dismissing the claim for refund of the taxes on the chinaware. Both parties appealed from the judgment to the extent that it was adverse to each of them.

I

 The question presented by the appeal of the taxpayer is whether the chinaware involved herein was an "article of jewelry" as defined in § 8 of the Internal Revenue Law, as amended by Act No. 111, Laws of Puerto Rico, 1949, 13 L.P.R.A. § 968, and therefore subject to a 20 per cent excise tax.[1]

The Secretary asserts and the trial court held that the chinaware herein was taxable under § 8 on the ground that it was an article ". . . made of, ornamented with, embedded, set, covered or mounted with, or attached to, precious metals . . . ".[2] These plates were not made in whole or

---

[1] Under par. 27 of § 16 of the Internal Revenue Law, as amended by Act No. 66, Laws of Puerto Rico, 1945, 13 L.P.R.A. § 1057, articles of jewelry, as defined in § 8, are subject to a 20 per cent excise tax on the selling price in Puerto Rico.

[2] Section 8, as amended by Act No. 111 of 1949, reads as follows:
"*Articles of Jewelry.*—For the purposes of this Act, 'articles of jewelry' shall be understood to mean all articles commonly or commercially known as such, whether real or imitation; pearls, precious or semi-precious stones and imitations thereof; *articles made of,*

in part of any precious metal such as gold. But the theory of the trial court was that they were ornamented with gold and therefore taxable under the above-quoted portion of § 8.

The plates in question have no gold as such embedded in them. In concluding that they were taxable under § 8 as articles of jewelry, the trial court relied principally on the fact that they have a design 1-½ inches wide and $\frac{4}{1,000,000}$ of an inch thick affixed to their border. (See footnote.) It is evident—from an examination of the two specimen plates introduced in evidence—that the said design was placed on the surface of the plates by a decalcomania process. The material used in this decorative design was gold paint. The latter—as the taxpayer concedes—undoubtedly contained a very small, unspecified amount of

---

ornamented with, embedded, set, covered, or mounted with, or attached to, precious metals or imitations thereof, or with ivory, amber, or jet; articles gilded on fire with precious metals or alloys thereof; watches and clocks of all kinds; spy glasses, telescopes, and binoculars; compacts, vanities, or other metal cases for toilet, makeup or manicure; gold, gold filled, silver, silver filled, or sterling silver; articles commercially known as 'plastic jewelry'; trophies of all kinds; Provided, That for the purposes of this Act, 'precious metals' shall be understood to mean gold, silver, sterling silver, platinum, rhodium, osmium, and paladium, of whatever grade of purity; Provided, That there shall not be understood as articles of jewelry:

"(a) Natural pearls, natural or rough precious or semi-precious stones which have not been cut or polished;

"(b) articles used exclusively for religious purposes, excluding crosses, medals or other symbols when embedded with diamonds or precious stones and are for personal use;

"(c) surgical instruments;

"(d) frames or mountings for spectacles or eyeglasses;

"(e) fountain pens, stylographic pens, and automatic pencils;

"(f) gold or silver for use in dental or general surgery; rolled gold used by bookbinders for engraving books, and the books so engraved;

"(g) articles made of corozo, coconut, tortoise shell, wood, camándulas, peonías, bamboo, higüera, maraca, matos, blackberry bush (zarza negra), maguey, sanseviera, sabután, and hollejo, as well as such articles as are manufactured or made of seashells, when the latter and former are not ornamented with pearls, precious or semi-precious stones or metals, or with ivory;

"(h) trinkets and jewelry the unit price of which at point of

gold.[3] But we cannot agree that a decoration consisting of an extremely thin veneer of gold paint—which is admittedly only $\overline{\dfrac{4}{1,000,000}}$ of an inch thick and is not even a part of the plate as such—is enough to make the plates taxable within the meaning of § 8.

It is true that no specific amount of a precious metal as such need be included in an article in order to make it subject to taxation under § 8 as an "article of jewelry". But we do not believe the Legislative Assembly intended to tax as jewelry a common household necessity such as the ordinary chinaware involved herein which was to be sold

origin be twenty-five (25) cents or less, excluding parts, spare parts and accessories for watches and jewels. *Provided, likewise, That by 'imitation precious metals' shall be understood:*

"(a) Alloys or mixtures of precious metals and common metals of inferior quality, in any proportion;

"(b) *the gilding, silver plating, or platinizing of inferior metals with precious metals;*

"(c) jeweler's bronze, or any other metal or alloy used in the manufacture of articles of jewelry sold in Puerto Rico to the consumer at a price equal to or higher than that of articles similar or analogous to those gilded or otherwise alloyed, in any proportion, with gold, silver, platinum, rhodium, osmium, or paladium. *Provided, however, That when the imitation contains no proportion of gold, silver, or platinum, the article thus gilded or otherwise alloyed with said imitation, shall not be considered article of jewelry, unless it is, in the judgment of the Treasurer of Puerto Rico, a piece of jewelry, compact, vanity, or article essentially ornamental."* (Italics ours.)

For the various amendments from 1925 to 1949 whereby the Legislative Assembly broadened the categories of articles taxable under § 8 as articles of jewelry, see § 8, Act No. 85, Laws of Puerto Rico, 1925; § 1, Act No. 17, Laws of Puerto Rico, 1927; § 1, Act No. 116, Laws of Puerto Rico, 1943; § 1, Act No. 66, Laws of Puerto Rico, 1945; Act No. 302, Laws of Puerto Rico, 1946; Act No. 111, Laws of Puerto Rico, 1949.

[3] The record contains the following colloquy:

"Judge: Then, there is no metal as such in the plate . . . ?

"Plaintiff: Nothing. The paint has a certain proportion of gold . . .

"Defendant: We accept that."

at comparatively modest prices [4] merely because it was decorated by an inexpensive and superficial process with a 1-½ inch border of gold paint $\frac{4}{1,000,000}$ of an inch thick. We agree that decorations on plates do not make the latter any more utilitarian. But practically all chinaware—even the cheapest kind—has some decorative feature to make it more attractive to a prospective purchaser. And a decoration of the type involved herein does not convert a plate into an article of jewelry, if it would not otherwise be reasonably considered as such under § 8. Here the decoration—a decalcomania of an extremely thin gold paint, which is not a precious metal as such—does not have the effect of making the plate an "article of jewelry". [5]

---

[4] The taxpayer's invoices show that it purchased from the manufacturer chinaware sets of 41 pieces at $7.85 a set, and sets of 53 pieces at $9.80 a set. The Secretary of the Treasury placed a somewhat higher valuation thereon, see footnote 9.

[5] The plates also contain a circular design—in color and 4 inches in diameter—consisting of a couple in costume performing a dance to the music of a flute player, against an outdoor background. A trademark and a trade name are stamped in gold letters on the back of each plate. None of these decorative features plays a role here.

The fact that there is also stamped on the back of the two plates the phrases "Warranted 22 Kt. gold" and "24 Kt. gold", respectively, does not affect this case. Such a "warranty" may or may not have been illegal under other laws. But insofar as the gold contained in the paint herein is concerned, it has been pointed out that "[t]heoretically a grain [of gold] may be drawn into a wire 1-¼ mile long or worked into a *gold leaf* .0000033 inch thick that would cover 6 square feet." Shipley, *Jewelers Pocket Reference Book*, 2d ed., 1947, Gemological Institute of America, Inc., p. 22a. As the Secretary concedes, pure gold—which is rated at 24 K—cannot be used without an alloy or alloys since gold by itself is too soft to stand any wear or abrasion. An ounce of gold is valued at $35 an ounce. Each ounce contains 24 pennyweight, worth almost $1.46. The dwt. in turn has 24 grains. One grain therefore has the value of a little over 6 cents. And a grain of gold—worth 6¢— would serve to decorate a countless number of these plates, in view of the fact that the decoration on the plates is only $\frac{4}{1,000,000}$ of an inch thick and the fact that the alloys in the gold paint reduce the purity of the gold therein. It seems impossible to believe that this infinitesimal amount of gold results in making this chinaware an article of jewelry.

The Secretary and the trial court relied in part on Regulation No. 58, dated August 3, 1945. This Regulation contains an illustrative list of articles taxable under § 8, including "Sets of dishes made of or ornamented with precious metals or imitations." However, for reasons already indicated, we cannot hold that the chinaware involved in this case was ornamented with a precious metal as such.

We do not hold that some other chinaware—with gold as such or some other precious metal truly a part thereof or affixed thereto—would not be taxable under § 8. We hold only that these particular plates do not come within the category of "articles of jewelry" contemplated by the Legislative Assembly in § 8. The contrary view would go beyond permitting the tail to wag the dog; it would be permitting an imaginary tail to wag a very real dog, see footnote 5.

## II

█ The Secretary appealed from the judgment of the Superior Court insofar as it held that certain tableware and the containers therefor were not taxable under § 8. The trial court found that the tableware in question was not made of a precious metal or an imitation thereof, but rather was made of an inferior metal which was silverplated for the purposes of conservation and use. The testimony shows that this tableware had "a nickel base" and was "covered with a bath of silver".

We agree with the trial court that under the foregoing circumstances the tableware in question was not taxable under § 8. Here again the question is whether the articles are made of or ornamented with a precious metal or an imitation thereof. The tableware was not made of silver. The problem remains whether it was taxable because its

"nickel base" "was bathed with silver". But, as the trial court pointed out, this was done not to ornament the product, but rather to conserve it and to make it safe and healthful to use.[6] Under those circumstances, as the Federal cases passing on a similar question hold, the luxury tax imposed on articles of jewelry does not apply since the "bath of silver" is utilitarian rather than decorative. *Marshall Field & Co.* v. *United States*, 47 F. 2d 401 (Ct. Claims, 1931);

---

[6] The conclusions of law of the trial court read in part as follows:

"At first blush it [§ 8] seems to include as jewelry any article of commerce, no matter how common or routinary, plated with a precious metal or an imitation thereof, regardless of whether such article has anything in common, does not partake of the essentially decorative character of, and does not look at all like an article of jewelry in the common and commercial meaning of the term. Thus, there may be included a series of articles and objects of everyday use as, for example, the majority of metal musical instruments, ordinary silverware, and other domestic utensils made of cheap or inferior metals, but which, because of the use and purpose for which they are intended, are plated with silver, gold, or some other precious metal or combination or imitation thereof. *The silver plating in the process of manufacture of tableware made of steel, copper, or any other inferior metal is, in all likelihood, necessary not only for its conservation but also to render the article useful and adequate. The contact or reaction of an inferior metal with grease, acids, and other substances with which tableware normally comes into contact, is likely to be injurious to health or harmful to their conservation.* It does not seem to us that the purpose of silver plating ordinary tableware is to make it essentially decorative or ornamental, since these features appertain fundamentally to what is commonly known as jewels or jewelry.

"Naturally, sometimes both features—ornamentation or decoration and usefulness—may be present in the article, as in the case of tableware which, in addition to the features necessary to make it useful, would be ornamented, mounted, or fitted, for the sole purpose of decoration, with metals or precious stones or imitations thereof.

"Thus, in construing that part of the definition of articles of jewelry contained in § 8 of the Act, which refers to articles made of, ornamented with . . . covered with . . . precious metals or imitations thereof, it must be concluded that the lawmaker referred to such articles as are equal or similar in character to those decorative or ornamental articles commonly and commercially known as articles of jewelry, and not to any non-ornamental or non-decorative article or utensil designed for daily and ordinary use which is made of an inferior metal and must necessarily be covered or plated with a precious metal or imitation thereof." (Italics ours).

*Warrin China & Glass Co.* v. *Pedrick*, 88 F. Supp. 128 [7]
See S.T. 935, Internal Revenue Cumulative Bulletin 1948–2,
p. 192. This is in accord with the definition in § 8 of "imi-
tation precious metals" as including "the gilding, silver
plating, or platinizing of inferior metals with precious
metals" and the final *Proviso* of § 8 that such an article
shall not be considered an article of jewelry "unless it is,
in the judgment of the Treasurer of Puerto Rico, a piece
of jewelry . . . or article *essentially ornamental.*" (Italics
ours).[8] In addition, as in Part I, the comparatively modest
price of this ordinary tableware [9] aids us in concluding that
the Legislative Assembly did not intend in § 8 to tax this
particular tableware as an article of jewelry.

Regulation No. 58 includes "Sets of tableware made of
or ornamented with precious metals or imitations" in its
illustrative list of articles subject to taxation under § 8.
The regulation also defines "ornamented with precious
metals" as including "embedded with precious metals", "set
with precious metals", "covered with precious metals",
"mounted with precious metals", "attached to precious
metals". But these definitions are merely a restatement of
the pertinent language found in § 8. They do not help us
in deciding the specific question before us. We agree that
other tableware sets containing substantial ornamental
features would be taxable under § 8 and Regulation 58.
But, for the reasons stated, the tableware herein does not

---

[7] ". . . the test intended by the Congress is not whether the article
itself is utilitarian, but whether the precious metal or imitation thereof
on the article is utilitarian; *i. e.,* whether the precious metal or imitation
thereof was added because of its utility or solely for ornamentation. If
it is added for the latter reason, the article is taxable." *Warrin China &
Glass Co.* v. *Pedrick, supra,* 133.

[8] The Secretary cannot of course exercise his judgment in an arbitrary
fashion.

[9] The taxpayer sold it in Puerto Rico at the rate of $43.50 for 26
pieces, which consisted of a service for 6 people; it sold a service for
12 people, consisting of 52 pieces, for $87.

fall in that category.[10] It is perhaps unnecessary to add that here again we confine our holding to the facts of this particular case.[11]

The Secretary also contends that the containers for the tableware are subject to taxation under par. 27 of § 16, 13 L.P.R.A. § 1057, which imposes a 20 per cent tax on "all articles of jewelry . . . and cases therefor . . . ". As we have held that the tableware herein is not an article of jewelry under § 8, the containers therefor are likewise not taxable.

The judgment of the Superior Court will be modified to provide that the taxpayer is entitled to a refund of the excise taxes paid on the tableware and the containers therefor, as well as a refund of such taxes on the chinaware. As thus modified, the judgment of the Superior Court will be affirmed.

Mr. Justice Belaval and Mr. Justice Saldaña did not participate herein.

---

[10] Cf. § 17 of Act No. 2, Laws of Puerto Rico, 1956, known as "Excise Act of Puerto Rico", particularly § 17(a)(8) and § 17(c)(12). The problem raised by these changes in the law as to the excise tax on articles of jewelry is of course not before us.

[11] The result we have reached makes it unnecessary to pass on the taxpayer's contention that the Secretary erred in rejecting its invoices in establishing its cost prices as the basis for determining the selling price of the articles involved herein. See 13 L.P.R.A. § 964.