EMPRESS STERLING Co., demandante, apelada y apelante. *v.* SECRETARIO DE HACIENDA, demandado, apelante y apelado.

Número 11373.

*Sometido:* 3 de abril de 1956. *Resuelto:* 19 de junio de 1956.

*Hon. Secretario de Justicia José Trías Monge (J. B. Fernández Badillo, Secretario de Justicia Interino,* en el alegato) y *Carlos N. Souffront, Procurador Auxiliar,* abogados del demandado, apelante y apelado; *Gutiérrez & Sánchez* y *C. Morales, Jr.,* abogados de la demandante, apelada y apelante.

EL JUEZ PRESIDENTE SEÑOR SNYDER emitió la opinión del Tribunal.

Durante 1951 y 1952 la Empress Sterling Company pagó la cantidad de $4,302.12 por concepto de arbitrios sobre ciertos cubiertos, estuches para los mismos y vajillas. El Secretario de Hacienda declaró sin lugar una solicitud de reintegro y la contribuyente demandó al Secretario ante el Tribunal Superior en reclamación de dicho reintegro. Celebrado el juicio en los méritos, el Tribunal Superior dictó sentencia ordenando el reintegro de los arbitrios cobrados por concepto de los cubiertos y sus estuches, pero desestimó

la reclamación de reintegro, de los arbitrios pagados sobre las vajillas. Ambas partes han apelado de dicha sentencia en tanto en cuanto la misma les fué adversa.

I

La cuestión que presenta la apelación de la contribuyente es si las vajillas aquí envueltas eran un "artículo de joyería" según lo define la sec. 8 de la Ley de Rentas Internas, enmendada por la Ley núm. 111, Leyes de Puerto Rico, 1949, 13 L.P.R.A. sec. 968, y por consiguiente sujetas al impuesto del 20%.[1]

El Secretario sostiene y el tribunal sentenciador resolvió que las vajillas aquí envueltas tributaban bajo la sec. 8 por el fundamento de que eran un artículo "...hechos de, adornados con, incrustados en, engastados en, enchapados con, montados en, engarzados en, metales preciosos...".[2]

Estos platos no estaban hechos ni en todo ni en parte de ningún metal precioso como lo es el oro. Pero la teoría del

[1] De conformidad con el inciso 27 de la sec. 16 de la Ley de Rentas Internas, según fué enmendada por la Ley núm. 66, Leyes de Puerto Rico, 1945, 13 L.P.R.A. sec. 1057, los artículos de joyería, según se definen en la sec. 8, están sujetos a un impuesto del 20% sobre el precio de venta en Puerto Rico.

[2] La sec. 8, según fué enmendada por la Ley núm. 111 de 1949, dispone como sigue:

"*Artículos de Joyería.*—Para los fines de esta Ley se entenderá por 'artículos de Joyería' todos los artículos común o comercialmente conocidos como tales, bien sean legítimos o 'imitaciones'; las perlas, piedras preciosas o semipreciosas y las imitaciones de ellas; *los artículos hechos de, adornados con, incrustados en, engastados en, enchapados con, montados en, engarzados en, metales preciosos o 'imitaciones' de ellos*, o con marfil, ámbar o azabache; los artículos dorados al fuego con metales preciosos o aleaciones de los mismos; los relojes de todas clases; los anteojos, telescopios y binoculares; los 'compactos', 'vanities', y otras cajitas o *necesers* de metal para el tocado, los afeites o la manicura; el oro, enchape de oro; la plata, enchape de plata o plata esterlina; los artículos comercialmente conocidos como 'joyería plástica'; los trofeos de todas clases; *Disponiéndose*, que para los fines de esta Ley, se entenderá por 'metales preciosos' el oro, la plata, la plata esterlina, el platino, el rodio, el osmio y el paladio, en cualquier grado de pureza de dichos metales; *Disponiéndose* que no se entenderá por artículos de joyería:

"(*a*) Las perlas, piedras preciosas o semipreciosas en bruto o naturales que no hayan sido sometidas a proceso de tallado o pulimentación;

tribunal sentenciador fué que los mismos estaban adornados con oro y por tanto tributaban de conformidad con la disposición arriba copiada de la sec. 8.

Los platos en cuestión no tienen oro propiamente dicho incrustado en los mismos. Al resolver que éstos tributaban de acuerdo con la sec. 8 como artículo de joyería, el tribunal sentenciador descansó principalmente en el hecho de que los mismos tienen un diseño de $1\frac{1}{2}$ pulgadas de ancho y de $\frac{4}{1,000,000}$ de pulgada de espesor sobrepuesta en el borde. (Véase el escolio 5.) Es evidente—de un· examen de las muestras de los dos platos que se introdujeron en evidencia —que dicho diseño fué sobrepuesto en la superficie de los platos mediante un procedimiento de calcomanía. El material usado en este diseño decorativo era pintura de oro.

---

"(b) Los artículos usados exclusivamente para fines religiosos, excluyéndose las cruces, medallas u otros símbolos cuando vengan incrustados o adornados con diamantes o con piedras preciosas o con perlas y sean para uso de la persona;

"(c) Los instrumentos de cirugía;

"(d) Los marcos o monturas para lentes o espejuelos;

"(e) Las plumas fuentes, estilográficas y lapiceros;

"(f) El oro o la plata para ser usado en cirugía dental o general; el oro laminado que usan los encuadernadores para grabar los libros; los propios libros así grabados;

"(g) Los artículos de corozo, coco, concha de carey, madera, camándulas, peonías, bambú, higüera, maraca, matos, zarza negra, maguey, sanseviera, sabután y hollejo, así como también aquellos artículos que se manufacturen o fabriquen con conchas o caracolillos de mar (seashell), cuando éstos y aquellos artículos no estén adornados con perlas, piedras o metales preciosos, o semipreciosos, o con marfil;

"(h) Las baratijas y prendas cuyo precio por unidad en el punto de origen sea de veinticinco (25) centavos o menos, excluyéndose las partes, piezas y accesorios de relojes y prendas.

"Disponiéndose, asimismo, que se entenderá por 'imitaciones' de metales preciosos:

"(a) Las aleaciones o ligas de metales preciosos, en cualquier proporción, con metales ordinarios de calidad inferior;

"(b) Los dorados, plateados o platinados de metales preciosos sobre metales inferiores;

"(c) El 'jeweler's bronze', o cualquier otro metal o aleación de metales que se usen en la manufactura de artículos de joyería que se vendan en Puerto Rico al consumidor a precio igual o mayor que los artículos de igual o análoga naturaleza que los enchapados, o en otra forma inter-

Dicha pintura—según admite la contribuyente—contenía indudablemente una pequeñísima e indeterminada proporción de oro.([3]) Pero no podemos convenir que un adorno que consiste de una fina capa de pintura de oro—que se admite tiene sólo un espesor de $\frac{4}{1,000,000}$ de pulgada y ni siquiera es parte del plato propiamente dicho—es suficiente para hacer que los platos tributen dentro del significado de la sec. 8.

Es cierto que no es necesario incluir en un artículo cualquiera cantidad específica alguna de un metal precioso, propiamente dicho, con el fin de que dicho artículo tribute a tenor con la sec. 8 en concepto de "artículo de joyería". Pero no creemos que la Asamblea Legislativa tuvo la intención de imponer contribuciones en calidad de joyería a un artículo doméstico como lo son las vajillas corrientes aquí envueltas destinadas a venderse a un precio comparativamente bajo([4]) meramente porque las mismas estaban adornadas mediante un procedimiento superficial y de poco costo con un borde de 1½ pulgadas de pintura de oro con $\frac{4}{1,000,000}$ de pulgada de espesor. Convenimos que los adornos en los platos no los hacen más útiles. Pero prácticamente

venidos, en cualquier proporción, por el oro, la plata, el platino, el rodio, el osmio o el paladio. *Disponiéndose, sin embargo, que cuando en las 'imitaciones' no haya ninguna proporción de oro, plata, o platino, el artículo enchapado con, o en otra forma intervenido por dichas 'imitaciones', no se considerará 'artículo de joyería' a menos que sea una prenda, o un compacto, o un 'vanity', o un artículo esencialmente decorativo, a juicio del Tesorero de Puerto Rico.*" (Bastardillas nuestras.)

Para las varias enmiendas desde 1925 a 1949 por la cual la Asamblea Legislativa amplió las categorías de los artículos tributables bajo la sec. 8 como artículos de joyería, véanse sec. 8, Ley núm. 85, Leyes de Puerto Rico, 1925; sec. 1, Ley núm. 17, Leyes de Puerto Rico, 1927; sec. 1, Ley núm. 116, Leyes de Puerto Rico, 1943; sec. 1, Ley núm. 66, Leyes de Puerto Rico, 1945; Ley núm. 302, Leyes de Puerto Rico, 1946; Ley núm. 111, Leyes de Puerto Rico, 1949.

([3]) De los autos surge el siguiente diálogo:

"Sr. Juez: ¿Entonces en el plato no hay metal propiamente dicho...?

"Demandante: Nada. La pintura tiene cierta proporción de oro...

"Demandado: Aceptamos eso."

([4]) Las facturas de la contribuyente demuestran que ella compró del fabricante vajillas de 41 piezas a $7.85 cada una y de 53 piezas a $9.80. El Secretario de Hacienda fijó a las mismas un precio algo mayor, véase escolio 9.

todas las vajillas—aun las más baratas—tienen un adorno que las hace más atractivas al comprador potencial. Y un adorno del tipo aquí envuelto no convierte un plato en un artículo de joyería, si el mismo razonablemente no se consideraría por algún otro motivo como tal bajo la sec. 8. Aquí el adorno—una calcomanía de pintura de oro de espesor muy fino, que no es un metal precioso propiamente dicho—no tiene el efecto de hacer que el plato sea un "artículo de joyería". ([5])

El Secretario y el tribunal sentenciador descansaron en parte en el Reglamento núm. 58, del 3 de agosto de 1945. Este Reglamento contiene una lista ilustrativa de los artículos tributables bajo la sec. 8, incluyendo "juegos de vajillas hechos de o adornados con metales preciosos o imita-

---

([5]) Los platos tienen también un dibujo circular—en colores y de cuatro pulgadas de diámetro—consistente de una pareja con trajes antiguos bailando a los acordes de la flauta de un músico, con un paisaje de fondo. Al dorso de cada plato aparecen el sello y la marca de fábrica estampados en letras de oro. Ninguno de estos aspectos decorativos juega papel alguno en este caso.

El hecho de que también aparezcan estampadas al dorso de los dos platos las frases "Warranted 22 Kt. gold" y "24 Kt. gold", respectivamente, no afecta este caso. Tal "garantía" puede o no haber sido ilegal bajo otras leyes. Pero en tanto en cuanto respecta el oro comprendido en la pintura de que se trata, se ha dicho que "teóricamente un grano [de oro] puede estirarse hasta convertirlo en un fino alambre de milla y cuarto de largo o elaborarse en una *lámina de oro* de .0000033 de pulgada de espesor que cubriría una superficie de seis pies cuadrados." Shipley, *Jewelers Pocket Reference Book*, 2d ed., 1947, Gemological Institute of America, Inc., pág. 22a. Según admite el Secretario, el oro puro—que se estima en 24K—no puede usarse sin una aleación o aleaciones ya que el oro de por sí es muy blando para resistir el uso o el desgaste.

Una onza de oro está valorada en $35. Cada onza contiene 24 céntimos, valorado cada uno en $1.46 aproximadamente. El céntimo a su vez tiene 24 granos. Por consiguiente, un grano tiene el valor de un poco más de $0.06. Y un grano de oro—valorado en $0.06—daría para decorar innumerables de estos platos, en vista del hecho de que el adorno de los mismos solamente de $\frac{4}{1,000,000}$ de pulgada de espesor y del hecho de que las aleaciones en la pintura de oro reducen la pureza de éste. Es imposible creer que esta infinitesimal cantidad de oro traiga como resultado que estas vajillas sean artículos de joyería.

ciones". Sin embargo, por los motivos ya expuestos, no podemos resolver que las vajillas aquí envueltas estaban adornadas con un metal precioso como tal.

No resolvemos que algunas otras vajillas—que tengan oro propiamente dicho o algún otro metal como parte verdadera de las mismas o adherido a ellas—no estarían sujetas a contribuciones bajo la sec. 8. Sólo resolvemos que estos platos específicos no caen dentro de la categoría de "artículos de joyería" contemplados por la Asamblea Legislativa en la sec. 8. Decidir lo contrario sería ir más allá de pretender tapar el cielo con la mano; sería pretender que una mano imaginaria tapara un cielo muy real, véase el escolio 5.

## II

■ El Secretario apeló de la sentencia del Tribunal Superior en tanto en cuanto resolvió que ciertos cubiertos y sus estuches no eran tributables bajo la sec. 8. El tribunal sentenciador resolvió que los cubiertos en cuestión no estaban hechos de ningún metal precioso ni de ninguna imitación de éstos, sino más bien que estaban hechos de un metal inferior con enchape de plata a los fines de conservación y uso. La prueba demuestra que estos cubiertos tenían "una base de níquel" y "los cubría un baño de plata".

Convenimos con el tribunal sentenciador en que bajo las anteriores circunstancias los cubiertos aquí envueltos no eran tributables bajo la sec. 8. Nuevamente la cuestión aquí es si los artículos están hechos de o adornados con metales preciosos o imitaciones de los mismos. Los cubiertos no estaban hechos de plata. Resta el problema de si son tributables porque su "base de níquel" está cubierta con "un baño de plata". Pero, según manifestó el tribunal sentenciador, esto no fué hecho para adornar el producto, sino más bien para conservarlo y para que su uso fuera seguro

e higiénico. (⁶)    Bajo estas circunstancias, según resuelven los casos federales que han considerado una cuestión similar, el impuesto de lujo fijado sobre artículos de joyería no es de aplicación toda vez que "el baño de plata" es de aspecto utilitario más bien que decorativo. *Marshall Field & Co. v. United States*, 47 F.2d 401 (Ct. Claims, 1931) ; *Warrin*

---

(⁶) Las conclusiones de derecho del tribunal sentenciador dicen en parte como sigue:

"De primera impresión [sec. 8] parece ser que se incluye como joyería cualquier artículo en el comercio, por corriente o rutinario que sea, enchapado con un metal precioso o con imitación de un metal precioso, a pesar de que dicho artículo no tenga nada en común, no participe de la naturaleza esencialmente decorativa de, y no se parezca en nada a un artículo de joyería en el concepto común y comercial del vocablo. Así podrían quedar incluídos una serie de artículos y objetos de uso cotidiano, como serían, para dar un ejemplo, la mayoría de los instrumentos musicales de metal, los propios cubiertos corrientes y otros utensilios del hogar fabricados de metales ordinarios e inferiores, pero que por la naturaleza de su uso y el propósito a que están destinados, se terminan en un enchape ya sea de plata, de oro o de algún otro metal precioso, o combinación o imitación de los mismos. *La inmersión en un baño de plata en el proceso de fabricación de un cubierto hecho de acero, de cobre o de cualquier otro metal inferior es, con toda probabilidad una exigencia no solamente para su conservación sino también para hacer el objeto útil y adecuado para el uso. Posiblemente puede resultar nocivo a la salud o afectar su conservación, el contacto o la reacción de un metal inferior con las grasas, los ácidos y demás substancias con que normalmente viene en contacto un cubierto.* No nos parece que  al darle una inmersión en plata a un cubierto corriente hecho de un metal inferior, exista el propósito o la idea prevaleciente de hacerlo esencialmente decorativo u ornamental, atributos estos que corresponden fundamentalmente a lo que normalmente se conoce como joyas o joyería.

"Por supuesto hay ocasiones en que pueden coincidir en el objeto ambos atributos, el de la ornamentación o decoración y el de la utilidad, como sería un cubierto que en adición a lo necesario para ser útil, se le ornamentara, incrustara o engarzara con el único fin de decorarlo, con metales o con piedras preciosas o imitación.

"Así pues al interpretar aquella parte de la definición de artículos de joyería contenida en la sec. 8 de la Ley que se refiere a los artículos hechos de, adornados con . . . enchapados con . . . metales preciosos o imitaciones de ellos, hay que concluir que el legislador se refería a aquellos artículos de igual o parecida naturaleza decorativa u ornamental que tienen los artículos común y comercialmente conocidos como artículos de joyería, y que no pudo referirse a cualquier artículo o utensilio de uso diario y corriente de naturaleza no ornamental o decorativa que por exigencias de conservación o de uso, por estar hecho de un metal inferior, tuviera que ser enchapado o bañado en un metal precioso o imitación." (Bastardillas nuestras.)

*China & Glass Co.* v. *Pedrick,* 88 F. Supp. 128.([7])   Véase
S.T. 935, Internal Revenue Cumulative Bulletin 1948–2,
pág. 192.   Esto es a tenor con la definición hallada en la
sec. 8 de "imitaciones de metales preciosos" como incluyendo
"los dorados, plateados o platinados de metales preciosos
sobre metales inferiores" y el *Disponiéndose* final de la sec.
8 al efecto de que tal artículo no será considerado como ar-
tículo de joyería "a menos que sea una prenda... o un ar-
tículo esencialmente decorativo, a juicio del Secretario de
Hacienda." (Bastardillas nuestras.) ([8])   Además, lo mismo
que en la Parte I, el comparativamente bajo precio de estos
cubiertos corrientes([9]) nos ayuda al resolver que la Asam-
blea Legislativa no tuvo la intención en la sec. 8 de imponer
contribuciones a estos cubiertos específicos como artículos
de joyería.

El Reglamento núm. 58 incluye "juegos de cubiertos
hechos de o adornados con metales preciosos o imitaciones"
en su lista ilustrativa de los artículos sujetos a contribución
bajo la sec. 8.   El Reglamento también define la frase "ador-
nados con metales preciosos", como comprensiva de "incrus-
tados en metales preciosos", "engastados en metales pre-
ciosos", "enchapados con metales preciosos", "montados en
metales preciosos" y "engarzados en metales preciosos".
Pero estas definiciones son meramente una reexposición del
lenguaje pertinente hallado en la sec. 8.   No nos ayudan
para resolver la cuestión específica ante nos.   Convenimos
que otros juegos de cubiertos que contengan aspectos sus-

---

([7]) "...la norma que el Congreso tuvo en mente no es si el artículo
propiamente dicho es utilitario, sino si el metal precioso o la imitación
del mismo sobre el artículo es utilitario; v.g., si el metal precioso o su
imitación fué añadido con motivo de su utilidad o simplemente para or-
namentación. Si se le adiciona por el último motivo, el artículo es tribu-
table." *Warrin China & Glass Co.* v. *Pedrick,* supra, 133.

([8]) Desde luego, el Secretario no puede ejercer su criterio en forma
arbitraria.

([9]) La contribuyente los vendió en Puerto Rico a razón de $43.50 los
de 26 piezas que consistían de servicio para 6 personas y por $87.00 los
de 52 piezas con servicio para 12 personas.

tanciales de ornamentación pagarían contribuciones bajo la sec. 8 y el Reglamento núm. 58. Pero, por los motivos expuestos, los cubiertos envueltos en este caso no caen dentro de dicha categoría.([10]) Quizás es innecesario añadir que aquí otra vez limitamos nuestra decisión a los hechos de este caso específico.([11])

El Secretario también sostiene que los estuches para dichos cubiertos están sujetos al pago de contribuciones de conformidad con el inciso 27 de la sec. 16, 13 L.P.R.A. sec. 1057, que fija un impuesto de 20% sobre "todo artículo de joyería ... y estuches para la misma ...". Como ya hemos resuelto que los cubiertos en este caso no son artículos de joyería de acuerdo con la sec. 8, los estuches para los mismos tampoco son tributables.

*La sentencia del Tribunal Superior será modificada para disponer que la contribuyente tiene derecho al reintegro de los impuestos pagados sobre los cubiertos y sus estuches, así como al reintegro del impuesto pagado sobre las vajillas. Así modificada, la sentencia del Tribunal Superior será confirmada.*

Los Jueces Asociados Sres. Belaval y Saldaña no intervinieron.

---

([10]) *Cf.* sec. 17 de la Ley núm. 2, Leyes de Puerto Rico, 1956, conocida como "Ley de Arbitrios de Puerto Rico", especialmente las secs. 17(*a*)(8) y 17(*c*)(12). El problema surgido por razón de estos cambios en la ley con respecto a los arbitrios sobre artículos de joyería, desde luego no está ante nos.

([11]) El resultado a que hemos llegado hace innecesario examinar la contención de la contribuyente al efecto de que el Secretario cometió error al rechazar sus facturas para establecer el costo como base para determinar el precio de venta de los artículos aquí envueltos. Véase 13 L.P.R.A. sec. 964.