**APFEL et al. v. MELLON et al., Federal Reserve Board.**

Court of Appeals of District of Columbia.

Submitted April 1, 1929. Decided June 3, 1929.

No. 4837.

Vernon E. West, of Washington, D. C., and Ormsby McHarg, of New York City, for appellants.

Leo A. Rover, of Washington, D. C., and Newton D. Baker, of Cleveland, Ohio, for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. This is an appeal from a final order of the lower court dismissing the appellants' petition for a writ of mandamus upon the allegations of the petition and answer.

The case arises under the Act of Congress of December 24, 1919 (41 Stat. 378), commonly known as the "Edge Act," first enacted as section 25(a) of the Federal Reserve Act. See title 12 USCA §§ 611 to 631.

The act provides that corporations may be organized for the purpose of engaging in international or foreign banking or other international or foreign financial operations, and may be formed by any number of natural persons not less than five; that such persons shall enter into articles of association which shall specify in general terms the objects for which the association is formed, and shall execute an organization certificate which shall set out the name assumed by the corporation, the place or places where its operations are to be carried on, the place in the United States where its home office is to be located, the amount of its capital stock and the number of shares into which it shall be divided, the names and places of business or residence of the persons executing the certificate and the number of shares to which each has subscribed, and the fact that the certificate is made to enable the subscribers and their successors to avail themselves of the advantages of the act. It provides also that no corporation shall be organized under the act with a capital stock of less than $2,000,000, one quarter of which shall be paid in before the corporation may be organized to begin business; that the persons signing the organization certificate shall duly acknowledge the execution thereof, and forward it to the Federal Reserve Board, and that after the articles of association and an organization certificate are duly made and filed, and "after the Federal Reserve Board has approved the same and issued the permit to begin business, the association shall become and be a body corporate," with certain specified powers including in general the right to engage in international or foreign banking or other financial operations. The act provides "that except such as is incidental and preliminary to its organization no such corporation shall exercise any of the powers conferred by this section until it has been duly authorized by the Federal Reserve Board to commence business as a corporation organized under the

provisions of this section." It also provides that such a corporation may establish and maintain branches 'or agencies in foreign countries at such places as may be approved by the Federal Reserve Board and under such rules and regulations as the Board may prescribe.

In the instant case the appellants, as relators below, filed their petition against the appellees as members of the Federal Reserve Board, alleging that the relators had duly executed and filed with the respondents, a certificate for the organization of a corporation under the foregoing act for the purpose of engaging in international or foreign banking under the name "Foreign Financing Corporation," and that the certificate fully conformed with the requirements of the act; but that the respondents nevertheless had wrongfully refused to approve of the same or to issue a permit to relators to begin business as a body corporate under the act. The relators prayed for a writ of mandamus to compel the respondents acting as the Federal Reserve Board to approve the articles of incorporation 'and the organization certificate aforesaid, and to permit relators to begin business as a body corporate under the name "Foreign Financing Corporation," in accordance with the provisions of the act.

The respondents filed their answer admitting that the articles of association and organization certificate filed with the Board by relators were in proper legal form, but stating that the Board had refused to approve the same on the following grounds:

"That the Federal Reserve Board as a board, and the respondents as members thereof, deem it their duty carefully to inquire into the qualifications of the organizers of such proposed corporations and to refuse to approve the articles of association and organization certificates of such proposed corporations and to issue a permit for such proposed corporations to do business, unless after investigation, said Board is of the opinion that the financial responsibility, experience, training, and other qualifications of the organizers of such proposed corporations are such as may reasonably be calculated to hold promise of the financial soundness, reliable and competent management, and proper and successful operation of such proposed corporation."

" * * * That relators do not possess the qualifications reasonably necessary to assure the financial soundness, reliable and competent management, or the proper or successful operations of a corporation organized under Section 25 (a) of the Federal Reserve Act to engage in the highly technical activities of international or foreign banking or other international or foreign financial operations and that it would be detrimental to the public interest to approve such articles of association or organization certificate and to issue a preliminary permit for such proposed corporation to commence business; and that, therefore, the said Board refused to approve the articles of association and the organization certificate and refused to issue a permit to said proposed corporation to begin business. Respondents say that this determination by the Federal Reserve Board was unanimous; that it was adopted after impartial investigation and full and impartial consideration of all the facts; and that respondents believed then and now believe that it would be contrary to public policy and contrary to the duty of respondents as public officers to approve said articles of association and said organization certificate or to issue a preliminary permit to the relators to begin business as a body corporate."

The relators filed a demurrer to the answer of respondents. The lower court overruled the demurrer, and, relators electing to stand upon their demurrer, the court dismissed the petition, and the relators appealed.

It is contended by appellees that the statute imposes the duty upon the Federal Reserve Board of exercising its judgment and discretion with respect to the approval or disapproval of the articles of association and organization certificates made and filed under the act, and that the Board's action in this instance is within the limits of that authority. On the other hand, appellants contend that "Congress has not undertaken to delegate to the Board the discretion it has assumed to exercise."

We agree with the contention of the appellees. The statute provides that an association formed under the act shall not become a body corporate until after the articles of association and organization certificate have been duly made and filed, and after the Federal Reserve Board has approved the same and issued a permit to it to begin business. The word "approved" naturally imports the exercise of judgment and discretion; and the power to approve ordinarily implies a power to disapprove.

To "approve" or give "approval" is in its essential and most obvious meaning to confirm, ratify, sanction, or consent to some act or thing done by another. The word "approve" does not, ex vi termini, necessarily import the exercise of discretion, but from the

connection in which the term is used it often involves the idea of discretion and adjudication, and is seldom construed as requiring a mere ministerial act. 4 C. J. 1464.

In the case of State ex rel. Dodd v. Hill, Banking Commissioner, 84 W. Va. 468, 100 S. E. 286, the Supreme Court of West Virginia dealt with a statute which provided that "hereafter no charter shall be issued to any bank to do business in this state until the application therefor has been approved in writing by the commissioner of banking." Acting under this statute the commissioner of banking had refused to issue such a charter to the appellants, upon the ground that, for the protection of the public, he had carefully considered the proposed location of the bank, the territory contributory thereto, its possibilities and probabilities from a banking standpoint, and other questions connected therewith, and that in the exercise of his best judgment as an officer he had arrived at the conclusion that the application should not be approved. In denying a writ of mandamus to compel the commissioner to issue a charter the court held that the statutory provision aforesaid vested in the commissioner discretionary power to approve or reject such an application, and that the commissioner's decision was not subject to judicial review unless it clearly appeared that he had "wilfully and arbitrarily disregarded his duty, or that his decision was due to caprice, passion, partiality or corruption."

In People ex rel. Schweder v. Brady, Auditor of Public Accounts, 268 Ill. 192, 108 N. E. 1009, the Supreme Court of Illinois held in relation to similar legislation, that a statute authorizing the state auditor to withhold the final certificate of organization of a bank when he is not satisfied as to the personal character and standing of the officers or directors, or when he has reason to believe that the bank is organized for any purpose other than that contemplated by the act, is not unconstitutional on the ground that it confers judicial or legislative power on the auditor. See First National Bank v. Union Trust Co., 244 U. S. 416, 37 S. Ct. 734, 61 L. Ed. 1233, L. R. A. 1918C, 283, Ann. Cas. 1918D, 1169.

In the instant case it is clear that Congress was providing a means for conferring special and important privileges upon such corporations as should be organized under the Edge Act. An abuse by any corporation of the powers thus granted to it might involve grave consequences to our public service. It is reasonable to believe that Congress intended that a careful investigation should be made by the Federal Reserve Board concerning the character and competency of the incorporators of such an enterprise, as one of the means of determining whether to grant or withhold their approval of the application for incorporation. Moreover, it should be noted that the act repeatedly provides for an "approval" by the Board as a prerequisite to proceedings authorized thereunder, and in all such instances the term plainly implies the exercise of consideration, judgment, and discretion by the Board. The act provides, inter alia, that any such corporation may at any time within the two years next previous to the date of the expiration of its corporate existence, by a vote of the shareholders owning two-thirds of its stock, apply to the Federal Reserve Board for its approval to extend the period of its corporate existence for a term of not more than twenty years, and upon certified approval of the Board such corporation shall have its corporate existence for such extended period. The Board, accordingly, may exercise its judgment and discretion with respect to what is practically a renewal of the corporate charter. This fact is significantly consistent with the view that the Board possesses a similar power over the granting of the first charter.

An examination of congressional legislation with regard to banking since 1864 shows that Congress has consistently used various forms of the word "approve" in the sense of conferring discretion upon the Comptroller of the Currency, the Secretary of the Treasury, or the Federal Reserve Board. Such a consistent use of the term in statutes in pari materia is persuasive. Marks v. United States, 161 U. S. 297, 16 S. Ct. 476, 40 L. Ed. 706.

The statutes relating to the organization of national banks are analogous to those now in question. It is therefore proper to note that the Comptroller of the Currency has prescribed the following as one of the regulations governing the investigations to be made by the examiners relating to applications for national bank charters: "In making this investigation the examiner is instructed to give full consideration to all factors entering into the proposition. Among other matters to be considered are: First, the general character and experience of the organizers and of the proposed officers of the new bank; second, the adequacy of existing banking facilities and the need of further banking capital; third, the outlook for the growth and development of the town or city in which the bank is to be located; fourth, the methods and banking practices of the existing bank or banks, the interest rates which they charge to

customers, and the character of the service which as quasi-public institutions they are rendering to their community; fifth, the reasonable prospects for success of the new bank if efficiently managed." Instructions No. 4 of the Comptroller of the Currency, Regulations Promulgated June 31, 1927, Digest of Rulings of the Federal Reserve Board with Appendices (1928) pages 394, 395. See McCormick v. Market Nat. Bank, 165 U. S. 538, 551, 552, 17 S. Ct. 433, 41 L. Ed. 817.

In the present case mandamus will not lie to control the exercise of the Board's discretion.

"It is a frequently asserted and universally recognized rule that mandamus only lies to enforce a ministerial act or duty; in this sense a ministerial duty may be briefly defined to be some duty imposed expressly by law, not by contract or arising necessarily as an incident to the office, involving no discretion in its exercise, but mandatory and imperative. The distinction between merely ministerial and judicial and other official acts is that where the law prescribes and defines the duty to be performed with such precision and certainly as to leave nothing to the exercise of discretion or judgment, the act is ministerial; but where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial." 18 R. C. L. 116.

The judgment of the lower court is affirmed, with costs.