**FEDERAL HOME LOAN BANK BOARD**
et al., Appellants
v.
**John W. ROWE et al., Appellees.**

**John B. HOADLEY et al., Appellants**
v.
**John W. ROWE et al., Appellees.**
**Nos. 15624, 15630.**

United States Court of Appeals
District of Columbia Circuit.

Argued May 20, 1960.

Filed Oct. 20, 1960.

Mr. Max Wilfand, Attorney, Federal Home Loan Bank Board, with whom Messrs. Thomas H. Creighton, Jr., General Counsel, Federal Home Loan Bank Board, Ray E. Dougherty and Paul E. McGraw, Attorneys, Federal Home Loan Bank Board, were on the brief, for Federal Home Loan Bank Board.

Mr. Roger Robb, Washington, D. C., with whom Mr. Linton M. Collins, Washington, D. C., was on the brief, for John B. Hoadley et al.

Mr. Thomas N. Dowd, Washington, D. C., for appellees John W. Rowe et al. Mr. Harold David Cohen, Washington, D. C., also entered an appearance for appellees John W. Rowe et al.

Before WILBUR K. MILLER, DANAHER and BURGER, Circuit Judges.

DANAHER, Circuit Judge.

The appellees, John W. Rowe and his associates (hereinafter called the "Rowe group") on March 30, 1959, applied to the Federal Home Loan Bank Board for permission to establish a federal savings and loan association in Largo, Florida. There was then before the Board a similar application which had been filed December 11, 1958, by John B. Hoadley and associates (hereinafter the "Hoadley group"). The Board under circumstances we will mention granted a separate hearing to each group, and after consideration of the two records, granted the application of the Hoadley group. Thereupon, the Rowe group in the Dis-

trict Court sought declaratory judgment and injunctive relief against the Board and its individual members, and the Hoadley group intervened. The District Court concluded that the provisions of the Administrative Procedure Act[1] should have governed the Board's proceedings and that the Rowe group should have been granted a comparative hearing before the Board pursuant to Ashbacker Radio Corp. v. F. C. C., 1945, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108. Accordingly, the District Court granted the motion for summary judgment filed by the Rowe group and denied the Board's motion to dismiss and a motion for summary judgment filed by the Hoadley group as intervenor. The Board and the Hoadley group filed separate appeals which were consolidated here.[2]

The Home Owners' Loan Act of 1933[3] authorized the organization and otherwise provided for the regulation of Federal Savings and Loan Associations. The Act provided in section 5(e)[4]:

> "No charter shall be granted except to persons of good character and responsibility, nor unless in the judgment of the Board a necessity exists for such an institution in the community to be served, nor unless there is a reasonable probability of its usefulness and success, nor unless the same can be established without undue injury to properly conducted existing local thrift and home-financing institutions."

No statutory provision whatever was made for hearings through the medium of which the prescribed criteria were to be established. On the contrary, Congress clearly reposed in the Board a wide discretion in its determination of whether or not the standards had been met.

The Board was charged with a high responsibility, and was commensurately bound to exercise its best judgment, necessarily flexible in the banking and monetary field, in order "to provide local mutual thrift institutions in which people may invest their funds and in order to provide for the financing of homes * * *."[5] The Board was not required to issue a charter; it might issue within a given area more than one. It might limit the issuance to a single association. Congress knew very well that conditions in an agricultural area might differ from those in an urban field or a mining community. A delicate balance of the Board's judgment clearly was required in determining the likelihood of successful operations, not only for the welfare of shareholders in the association but with regard to the possible impairment of confidence in and the stability of other thrift institutions. The Government itself had a continuing interest in each such association as might qualify for a charter. In particulars here pertinent, from 1933 to the present time, Congress has never amended the basic act.

Thus no group of associates was given a statutory status. No "right" was conferred. Unlike the situation in Ashbacker Radio Corp. v. F. C. C., supra, the basic statute here did not entitle competing groups of applicants to a comparative hearing. In Ashbacker, it will be remembered, the Commission made an award to one applicant and set for hearing the application of another. Here the Congress simply gave no right to a charter to any particuar group. Reliance upon Ashbacker accordingly is misplaced' for its rule[6] does not here control.

Of course, Congress could itself have issued charters such as the Board was.

1. 5 U.S.C.A. §§ 1001–1011.

2. After argument we entered our order on June 20, 1960, reversing the judgment and directing that the complaint be dismissed, noting that our opinion would follow in due course.

3. 48 Stat. 128, 12 U.S.C.A. § 1461 et seq.

4. 48 Stat. 133, and see 12 U.S.C.A. § 1464 (e).

5. § 5(a), 48 Stat. 132; 12 U.S.C.A. § 1464 (a).

6. Even if it could be said to apply, the Board is shown on this record to have accorded consideration to both the Rowe and Hoadley applications before acting on either.

authorized to approve. Rather, it provided for the creation of the Board to act in behalf of Congress, with members to be nominated by the President subject to confirmation by the Senate. To that Board Congress committed authority to prescribe "such rules and regulations" as might "provide for the organization, incorporation, examination, operation, and regulation of associations" [7] and "to issue charters therefor, giving primary consideration to the best practices of local mutual thrift and home-financing institutions in the United States." [8]

Pursuant to such authorization the Board promulgated elaborate regulations generally applicable to the Federal Savings and Loan System.[9] Both 24 C.F.R. § 142.2 (1958), applicable when the Hoadley group filed and 12 C.F.R. § 542.2 (1959), applicable when the Rowe group filed, permitted the filing of a request for hearing by an applicant whose application "has been denied or disapproved by the Board." Again of equal applicability, 24 C.F.R. § 143.2(c) (1958) and 12 C.F.R. § 543.2(c) (1959) provided that if "the Board does not deny the application on the basis of the data submitted by the applicants and any other information in its possession without a hearing, it will set a date on which a hearing may be held * * *." [10]

Notice of the hearing on the application of the Hoadley group was published on April 16, 1959. Thereupon the Rowe group on May 6, 1959 notified the Board of their intention to appear at the hearing set for May 18, 1959 to "offer objections to the granting of the [Hoadley] charter." The protestants asserted that they possessed "more suitability for managing and handling a Federal Savings and Loan Association than the John B. Hoadley, et al. group." The Rowe group appeared at the time and place set for the hearing. There is no suggestion that they were denied an opportunity to cross examine or to offer evidence. They raised no objection to the procedures which had been outlined in the notice of hearing and which actually were followed. The Rowe group made no motion to consolidate their application with that of the Hoadley group. Indeed, it is obvious from the very notices of hearing as prescribed by the Board and as published that the Examiner was to refer the entire record of each hearing to the Board and was himself to make no decision.

Thus it appears of record at the Hoadley hearing Mr. Rowe stated "I have been here for three days * * *." He continued:

"Although there is no statutory provision which would confer this privilege upon me, I feel, in all fairness to the Board and to the groups who have applied for a charter in this general area, that it would be better if the Board had all of the testimony to be offered by both groups before it made a final determination on this charter.

* * * * * *

"Therefore, I ask and move the Board to delay a final determination of this application until such time as our application has been heard and there has been an opportunity for the Board to consider the two of them together."

The Hearing Examiner stated: "It is my understanding that this is made in the form of a motion to the Board to defer determination of the outcome of this hearing until your hearing has been completed if there is such a hearing.

7. § 5(a), 48 Stat. 132; 12 U.S.C.A. § 1464(a)

8. Ibid.

9. 24 C.F.R. Ch. 1, Subchapter C (1958); 12 C.F.R. Ch. 5, Subchapter C (1959). Compare the Parts dealing with matter pertinent here with 24 C.F.R. § 202.29 in force June 1, 1938, the substance of which has been retained throughout the history of administration by the Board.

10. The same subsections conclude: "Notwithstanding any other provisions of this subchapter, the Board may at any time dispense with any hearing on an application for permission to organize a Federal Association."

"Mr. Rowe: That is right, and I understand there is no statutory provision which would confer such a privilege on me."

Before the Hoadley group hearing had been concluded, the Board by its resolution of May 12, 1959, as amended May 26, 1959, set a hearing on the application of the Rowe group to be conducted July 13, 1959.

On October 2, 1959, the Board approved the Hoadley application. The Board resolution having recited the pendency of both applications, concluded:

"Whereas, the Federal Home Loan Bank Board, upon consideration of the complete records and merits of said applications has determined that a necessity exists for only one new savings and loan facility in the area to be served, that there is a reasonable probability of the usefulness and success of the proposed Federal savings and loan association to be established by John B. Hoadley, et al., and that said proposed Federal savings and loan association can be established in such locality without undue injury to properly conducted existing local thrift and home-financing institutions serving the area; and

"Whereas, the Federal Home Loan Bank Board has determined that the demonstrated necessity and the purposes of Title IV of the National Housing Act, as amended, and the Home Owners' Loan Act of 1933, as amended, can best be served by granting the application of John B. Hoadley, et al.;

"Now, Therefore, It is Resolved That the application of John B. Hoadley, et al., for permission to organize a Federal savings and loan

association in Largo, Florida, is hereby approved, subject to the applicants complying with such conditions as shall be established by further action of this Board."[11]

It is clear that the Rowe group received the hearing provided for in the Board's regulations. As the Rowe group requested, the Board took no action until after completion of the hearing records on both applications. Moreover on Rowe's petition, reconsideration was accorded. The Rowe group now complain that because the Board attached conditions to its grant of permission to the Hoadley group to organize, it becomes manifest that their qualifications had not been established of record. In effect, Rowe argues that such qualifications should have been comparatively evaluated in advance of the Board's action favoring the Hoadley group, and absent a record of findings with respect thereto and evidence to support them, we must accord judicial review and reverse the Board's action.

In the first place, the regulations expressly prescribe that once the Board shall have approved an application, "it will establish, as conditions to be met prior to the issuance of a charter,"[12] certain specified requirements. The conditions prescribed here seem fully to have complied with the applicable regulation. Steps thereafter to be taken before a charter may actually be issued are carefully spelled out in succeeding subsections of 12 C.F.R. Parts 543 and 544 (1959). "The action of the Board shall be final." 12 C.F.R. § 543.5 (1959).

Next, Congress has not in the Act provided for judicial review of the Board's order denying an application for permission to organize an association. This omission was no inadvertence,[13] in-

11. "Such conditions" were pronounced the same day in a further Board Resolution, agreeably to 12 C.F.R. § 543.2(d) (1959).

12. 12 C.F.R. § 543.2(d) (1959).

13. Fahey v. O'Melveny & Myers, 9 Cir., 1952, 200 F.2d 420, 478-480, certiorari denied Willhoit v. Fahey, 1953, 345 U.S. 952, 73 S.Ct. 866, 97 L.Ed. 1374; cf. Miami Beach Federal Savings and Loan Ass'n v. Callander, 5 Cir., 1958, 256 F.2d 410, 413, 414, and see 12 U.S.C.A. § 1464(d) (1) wherein judicial review of proceedings under *that section* is made available.

deed Congress fully intended that the Board possess vast discretion [14] before "the Board approves the application." We observed in Apfel v. Mellon, 59 App. D.C. 94, 96, 33 F.2d 805, 807, certiorari denied, 1929, 280 U.S. 585, 50 S.Ct. 35, 74 L.Ed. 634:

> "An examination of congressional legislation with regard to banking since 1864 shows that Congress has consistently used various forms of the word 'approve' in the sense of conferring discretion upon the Comptroller of the Currency, the Secretary of the Treasury, or the Federal Reserve Board. Such a consistent use of the term in statutes in pari materia is persuasive."

The Attorney General's Committee on Administrative Procedure in reporting its recommendations to the Congress pointed out that in

> "determining whether individuals are suited to engage in the banking business, or whether the community needs a bank, or whether a bank should be insured and similar questions, a congeries of imponderables is involved, calling for almost intuitive special judgment so that hearings are not ordinarily useful, and that the banking business is a delicate one so that the advantages and importance of ready and frank information may outweigh the dangers of accepting confidential infor-

mation. Accordingly, and in the absence of any substantial evidence that there has been an abuse of power, the Committee is not prepared to recommend that either hearings be held prior to denial or that in all cases the identity of the author of the adverse evidence be disclosed to the applicant." [15]

It is not without significance that Congress accorded judicial review of agency action "Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion * * *." [16] We have hitherto held that authority to permit a chartered association to establish a branch is clearly committed to agency discretion.[17] There, and for the purposes of that case, we *assumed* that a hearing may be required as to an initial application for permission to organize. Here, the Board actually afforded hearings on both applications. As the Rowe group requested, it deferred consideration until both records had been completed. Only after the Board had finally acted was complaint voiced by the Rowe group.

Now without legal entitlement to a charter or the exhibition of the elements of "legal wrong" or other proof of unlawful Board action, the Rowe group has insisted it is entitled to judicial review. Of course, the mere absence from a statute of provision for judicial review "has sometimes been held not to foreclose re-

---

14. Cf. Greater Delaware Val. Federal Sav. and Loan Ass'n v. Federal Home Loan Bank Bd., 3 Cir., 1958, 262 F.2d 371, 374.

15. See Administrative Procedure in Government Agencies, Senate Documents No. 8, Vol. 2, 77th Cong., 1st Sess. 143 (1941); compare Memorandum Statement Containing Treasury Comments, Administrative Procedure, Part IV, Hearings Before a Subcommittee of the [Senate] Committee on the Judiciary, 77th Cong., 1st Sess. 1545, 1546 (1941):
"In chartering banks or issuing branch permits, it is necessary that the Comptroller bear in mind the general economic conditions of the Nation as well as of the specific community in which the new

bank or branch is to be located. It is essential that his judgment in specific cases be predicated upon a knowledge of general banking conditions throughout the country, for otherwise the result would be to create an over-banked condition with serious consequences to the banking structure of the Nation."
Such hearings predicated the Administrative Procedure Act, as to which see Legislative History, S.Doc. No. 248, 79th Cong., 2d Sess. 247 (1946).

16. 5 U.S.C.A. § 1009.

17. First National Bank of McKeesport v. First Federal Sav. & Loan Ass'n, 1955, 96 U.S.App.D.C. 194, 197, 225 F.2d 33, 36.

view," [18] as where some "right" may arise under an applicable statute [19] or from unlawful agency action.[20] But no showing on this record has established any such standing for the Rowe group.

Rather, we concluded the District Court should have dismissed the complaint. Such was our order, previously entered. We are persuaded that the Board's conclusions are not to be disturbed. We may apply the observation, in different context to be sure, but apt nonetheless, as phrased by Mr. Justice Rutledge [21]:

"Not only because Congress has committed the system's operation to their hands, but also because the system itself is a highly specialized and technical one, requiring expert and coordinated management in all its phases * * * their judgment should be conclusive upon any matter which, like this one, is open to reasonable difference of opinion. Their specialized experience gives them an advantage judges cannot possibly have, not only in dealing with the problems raised for their discretion by the system's working, but also in ascertaining the meaning Congress had in mind in prescribing the standards by which they should administer it. Accordingly their judgment in such matters should be overturned only where there is no reasonable basis to sustain it or where they exercise it in a manner which clearly exceeds their statutory authority."

Reversed.

18. Fahey v. Mallonee, 1947, 332 U.S. 245, 256, 67 S.Ct. 1552, 91 L.Ed. 2030.

19. Board of Governors of Federal Reserve System v. Agnew, 1947, 329 U.S. 441, 444, 67 S.Ct. 411, 91 L.Ed. 408; and see Kansas City Power & Light Company v. McKay, 96 U.S.App.D.C. 273, 280, 281, 225 F.2d 924, 932, 933, certiorari denied 1955, 350 U.S. 884, 76 S.Ct. 137, 100 L. Ed. 780; cf. Gart v. Cole, 2 Cir., 263 F.

2d 244, 250, certiorari denied 1959, 359 U.S. 978, 79 S.Ct. 898, 3 L.Ed.2d 929.

20. North Arlington Nat. Bank v. Kearny Federal Sav. & Loan Ass'n, 3 Cir., 187 F.2d 564, certiorari denied 1951, 342 U. S. 816, 72 S.Ct. 30, 96 L.Ed. 617.

21. Concurring in Board of Governors of Federal Reserve System v. Agnew, supra, note 19, 329 U.S. at page 450, 67 S.Ct. at page 415.