**Harry Joseph POLLACK and Arthur Morton Pollack, Appellants,**

v.

**Joy R. SIMONSON et al., Appellees.**

**No. 18862.**

United States Court of Appeals
District of Columbia Circuit.

Argued March 10, 1965.

Decided Aug. 3, 1965.

Mr. James P. Donovan, Washington, D. C., for appellants.

Mr. John R. Hess, Asst. Corp. Counsel for District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for appellee Simonson and others.

Mr. J. E. Bindeman, Washington, D. C., with whom Mr. Leonard W. Burka, Washington, D. C., was on the brief, for appellee Trio Beverage Co., Inc.

Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge, and McGOWAN, Circuit Judge.

BAZELON, Chief Judge.

Appellants, who currently hold a "class A" retailer's liquor license, applied on February 20, 1964, to the Alcoholic Beverage Control Board for permission to transfer their premises. A week earlier, on February 14, the Trio Bev-

erage Company had asked permission to transfer its licensed premises to a location close to that requested by appellants. Public hearings for Trio's application were held on March 11, and for appellants' application on March 18. Appellants were present at the Trio hearing and their attorney stated that they "offered no protest" to that application. On April 8, the Board granted Trio's application. On May 5, the Board denied appellants' application on the sole ground that the Trio license had been "issued for another location less than 300 feet from [appellants'] proposed location, [so that] it would not be in the best interests of the persons residing or owning property in the neighborhood to grant another such license." No one had suggested either at the Trio hearing or at appellants' hearing that the two applications were mutually exclusive, and no formal regulation under the statute requires that liquor stores be situated more than 300 feet apart.[1]

■■ We hold that the Board failed to give proper notice to appellants that it considered their application and Trio's mutually exclusive. The statute provides that the Board may "[consider] the character of the premises, its surroundings, and the wishes of the persons residing or owning property in the neighborhood * * *,"[2] in reviewing an application. Under this provision, the Board might properly find that two liquor stores within 300 feet proximity are inappropriate for a particular neighborhood.[3] But where the Board makes such a finding which affects simultaneously

pending applications, the Board must necessarily choose between competing applicants. Unless these applicants are aware of their mutual exclusivity, the Board is deprived of any assistance from them in finding rational grounds to distinguish among them.[4] Thus the statutory purpose—that specific public standards, not unbridled discretion, should control the Board's consideration of license applications—is jeopardized unless the Board gives each applicant some opportunity to show that his application should be favored.

■■ The Board may, in its discretion, hold formal comparative hearings, or follow some other procedure to inform itself in choosing between mutually exclusive applicants. In Federal Home Loan Bank Board v. Rowe, 109 U.S.App. D.C. 140, 284 F.2d 274 (1960), this court refused to require formal comparative hearings for choice between mutually exclusive applicants because the statute there did not explicitly provide for any hearing before denial of an application.[5] Similarly, the Alcoholic Beverage Control Act does not explicitly require a hearing before denial.[6] But in *Rowe*, unlike here, the appellants were aware, when appearing before the Bank Board, that their license application and others might be mutually exclusive, and they had the opportunity expressly to argue to the Board that "they possessed 'more suitability for managing and handling a Federal Savings and Loan Association than'" the other applicants. 109 U.S.App.D.C. at 142, 284 F.2d at 276.

---

1. Appellants allege that the Board has previously authorized numerous liquor stores within closer proximity than 300 feet.

2. D.C.Code § 25-115(5) (1961).

3. We think the Board is authorized to make such finding under this statutory provision, notwithstanding the absence of any formal regulation promulgated by the District Commissioners regarding necessary distances between liquor stores.

4. Compare Melody Music, Inc. v. Federal Communications Comm., 120 U.S.App.

D.C. ——, 345 F.2d 730, decided April 8, 1965; Hornsby v. Allen, 326 F.2d 605 (5th Cir. 1964); Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886).

5. See Ashbacker Radio Corp. v. Federal Communications Comm., 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945).

6. We express no view on whether the statute or the Constitution require any type of hearing before denial of license applications which are not mutually exclusive. See Hornsby v. Allen, *supra*, note 4.

For the foregoing reasons, the judgment of the District Court is reversed and the case remanded with instructions to enter judgment for appellants, directing the Alcoholic Beverage Control Board to conduct further proceedings consistent with this opinion.

So ordered.

WILBUR K. MILLER, Senior Circuit Judge (dissenting).

I am unable to concur in the foregoing opinion because I think the Board acted properly and the District Court's judgment affirming its action should be upheld.

In explaining my reasons for dissenting, I shall first make a fuller statement of facts, in the hope that it will be conducive to a better understanding of the problem before us. Then I shall set forth what I think is the reasoning which should lead to an affirmance of the District Court's judgment.

On February 14, 1964, Trio Beverage Company, Inc., filed with the Alcoholic Beverage Control Board of the District of Columbia an application to transfer its retailer's Class A liquor license to a location on Southern Avenue, S. E., between Ridge and Bowen Roads. After the advertisement required by the statute, the application, having been protested, was heard on March 11, 1964, and on April 8, 1964, the Board made findings of fact, reached conclusions of law, and granted the application. It said the license "may issue if and when the applicant meets all the requirements of this and other Municipal Agencies."

On February 20, 1964, Harry Jackson Pollack and Arthur Morton Pollack filed with the Board an application to transfer a retailer's Class A license to 4510 Bowen Road, S. E., less than 300 feet from the location for which Trio had applied. After due advertisement, a hearing on the Pollack application was set for March 18, 1964. Protests were filed and a full hearing was conducted on the day set. On May 5, 1964, the Board denied the Pollacks' application for transfer, holding that it would not be in the public interest to permit the transfer to a location within 300 feet of the Trio location previously approved.

The Pollacks sued the members of the Board and Trio in the United States District Court on May 13, 1964, and filed an amended complaint on May 21. They sought to enjoin the Board, both preliminarily and permanently, "from issuing, delivering or transmitting to Trio, the Retailer's Class 'A' license granted to it by the Board on April 8, 1964." They also prayed that the court order the Board to issue to them a retailer's Class A license for 4510 Bowen Road, S. E., or, in the alternative, that it recall and rescind the license granted to Trio and thereafter to determine from the records of the public hearings held on the two applications which of the applicants should be granted a license. Separate motions for summary judgment were filed by Trio and the members of the Board. After hearing, the District Court found that the findings of the Board in the two proceedings are supported by substantial evidence and are not arbitrary or capricious.

Also among the Court's findings was the following:

"Although plaintiffs [Pollacks] were physically present at said Trio hearing, they did not enter any formal appearance therein. They did not object to the granting of the Trio application, made no request to intervene in said hearing, and did not offer any evidence or otherwise testify therein. Plaintiffs did not request the Board to consolidate the hearing on the Trio application and the hearing on their own application."

The Court also found that prior to Trio's application "plaintiffs had actual knowledge of defendant Trio's intention to file its application to transfer" its license to the Southern Avenue location but that nevertheless on February 20 plaintiffs [appellants] filed their application to transfer an existing license to a location

within less than 300 feet from the location applied for by Trio.

Conclusions of law reached by the District Court include the following:

"1. Section 25–106, Code 1961, vests solely in the Board the right, power and jurisdiction to issue and transfer all licenses. Such statute provides that: 'The action of the Board on any question of fact shall be final and conclusive.'

"2. Under section 25–115(a)5, Code 1961, the Board must, among other things, satisfy itself before issuing a license that the character of the premises and its surroundings are appropriate. In so deciding, the Board may take into consideration the nearness to and number of other liquor stores in the neighborhood.

"3. Since plaintiffs had actual notice of Trio's application, but did not object to the granting of same, plaintiffs have no standing at this time to challenge the findings of the Board in said Trio case."

It should be noted at the outset that the applications involved here were for the transfer of existing licenses. The parties and the Board seem somewhat confused on that point: they speak of the issuance of a license when they mean the transfer of an existing license from one site to another. It may be that in authorizing such transfer, the Board follows the practice of cancelling the original license and issuing another for the new location; but the fact is, nevertheless, that the license has simply been transferred. The number of outstanding licenses has not been increased or decreased.

Section 25–106, D.C.Code (1961), is in part as follows:

"The right, power, and jurisdiction to issue, transfer, revoke and suspend all licenses issued under this chapter shall be vested solely in the Board, and the action of the Board on any question of fact shall be final and conclusive * * *."

In § 25–107 of the Code it is provided that "The Commissioners shall have specific authority to make rules and regulations for the issuance, transfer, and revocation of licenses * * *." The only rule or regulation which the Commissioners have made with respect to the transfer of licenses has to do with the transfer from one holder to another;[1] hence, the Commissioners have made no rule or regulation concerning the transfer of a license from one location to another. I think it beyond question, however, that the Board had authority under § 25–106 to authorize such a transfer, although the Commissioners have given it no standards or guidelines for the exercise of that authority.

Appellants argue that the Board has unlawfully limited the number of Class A licenses in the locality and that, without authority, it has fixed a minimum distance between the locations of such licenses. I do not agree. The Board has not limited the number of licenses in the locality or community; it has simply refused to transfer an existing license to a location less than 300 feet from one previously authorized. In doing so, I think the Board performed the duty imposed upon it by § 25–115(a), D.C.Code, which includes the following:

"* * *. Before a license is issued the Board shall satisfy itself:

"5. That the place for which the license is to be issued is an appropriate one considering the character of the premises, its surroundings, and the wishes of the persons residing or owning property in the neighborhood of the premises for which the license is desired."

---

1. Section 2–117 of the District of Columbia Regulations, Alcoholic Beverage Control, is as follows:

"TRANSFER OF LICENSES. Licenses may be transferred only upon the written request of the licensee, and the transferee shall comply with all the requirements of the Act respecting the granting of original licenses."

Although the Board must so satisfy itself "Before a license is issued," I think the provisions must also be followed before a license is transferred to a new location. It is hardly to be supposed that Congress provided that, before issuing a license, the Board must find that the place for which it is to be used is appropriate, but did not intend a similar finding to be made with respect to a different location to which a transfer is sought. I would hold that the Code section requires the Board to find appropriate any place for which a license is to be used, whether it be the original location or another to which transfer is sought.

The appellants argue that the Board unconstitutionally denied them due process and equal protection. Suffice it to say that I discern no constitutional issue. It is also argued by appellants that they were entitled to a comparative hearing under the *Ashbacker* doctrine;[2] but the basic statute involved here does not entitle competing applicants to a comparative hearing. Federal Home Loan Bank Board v. Rowe, 109 U.S.App.D.C. 140, 284 F.2d 274 (1960).

Apparently realizing that the *Rowe* case controls here, the majority seek to distinguish it from the present case. They admit that the Alcoholic Beverage Control Act, like the statute involved in the *Rowe* case, "does not explicitly require a hearing before denial." The *Rowe* decision also expressly held that, unlike the *Ashbacker* case, the basic statute involved "did not entitle competing groups of applicants to a comparative hearing." The same is true in the case under consideration: the basic statute does not entitle competing groups of applicants to a comparative hearing.

The majority's effort to distinguish this case from the *Rowe* case is set forth in the following language:

"  *  *  * But in *Rowe*, unlike here, the appellants were aware, when appearing before the Bank Board, that their license application and others might be mutually exclusive, and they had the opportunity to argue expressly to the Board that 'they possessed "more suitability for managing and handling a Federal Savings and Loan Association than"' the other applicants. 109 U.S.App.D.C. at 142, 284 F.2d at 276."

I find nothing in the *Rowe* opinion to indicate that the appellants there "were aware, when appearing before the Bank Board, that their license application and others might be mutually exclusive  *  *  *." Mutual exclusivity did not appear until nearly three months after the Rowe hearing when, on October 2, 1959, the Bank Board approved the application of another group and announced it had determined "that a necessity exists for only one new savings and loan facility in the area to be served  *  *  *." The Bank Board could have authorized both facilities, had it thought both were justified.

In like manner, the Alcoholic Beverage Control Board could have authorized the transfer of both liquor licenses here involved had it thought that course proper in the circumstances. The point is that the applications in the *Rowe* case and in this case were not made mutually exclusive by statute and were not so in fact until the two Boards decided that necessity exists for only one new facility in the area to be served.

Thus it is wrong to say, as does the majority opinion, that in the *Rowe* case, "unlike here, the appellants were aware, when appearing before the Bank Board, that their license application and others might be mutually exclusive  *  *  *."

The effect of the majority's holding here is that in the *Rowe* case the appellants were properly denied a comparative hearing because they knew their license application and others were mutually exclusive; but that in this case the appellants were unaware, when appearing

2. Ashbacker Radio Corp. v. Federal Communications Comm., 323 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945).

before the Board, that their license application and Trio's were mutually exclusive, and therefore they were entitled to a comparative hearing. In my view, this is queer reasoning.

The majority add, in attempting to distinguish the *Rowe* case, that the appellants here "had the opportunity to expressly argue to the Board that 'they possessed "more suitability for managing and handling a Federal Savings and Loan Association than"' the other applicants." This seems to imply that the appellants here had no opportunity to argue to the Board that they "possessed more suitability for managing and handling" a liquor store in the requested area than did Trio. Such an implication does not follow, because the appellants had full opportunity to make that argument to the Board. They were present at the Trio hearing but made no such argument. They stated they had no objection to the grant of Trio's application, did not move to consolidate the two proceedings, and did not ask to intervene or to offer evidence.

The majority's action here amounts to an unwarranted addition to the basic statute.