SOPHIA'S INCORPORATED, Petitioner,

v.

ALCOHOLIC BEVERAGE CONTROL
BOARD of the District of Co-
lumbia, Respondent,

Citizens Association of Georgetown, Inc.,
Intervenor.

No. 5312.

District of Columbia Court of Appeals.

Argued July 13, 1970.

Decided Aug. 25, 1970.

John R. Risher, Jr., Washington, D. C.,
for petitioner.

Leo N. Gorman, Asst. Corp. Counsel,
with whom Hubert B. Pair, Acting Corp.
Counsel, and Richard W. Barton, Asst.
Corp. Counsel, were on the brief, for
respondent.

Courts Oulahan, Washington, D. C., for
intervenor.

Before KELLY, FICKLING and
KERN, Associate Judges.

FICKLING, Associate Judge.

Following a hearing, the Board (respond-
ent) denied Sophia's (petitioner) a Class
"C" liquor license. Sophia's claims that
this denial was contrary to the evidence and
was arbitrary.

At the hearing on the application,
Sophia's informed the Board that it in-
tended to operate a gourmet Italian res-
taurant in Georgetown in premises be-
neath the Cerberus Theatres. Sophia's had
a 20-year lease at a minimum rental of
$75,000 per annum. Although the lease
was contingent upon Sophia's being granted

the license,[1] the landlord had already expended about $400,000 remodeling the premises.

The restaurant was to seat between 250–300 people, however, according to the application for a certificate of occupancy, it could accommodate up to 480 persons. There was to be background music and perhaps dancing to a musical trio. The restaurant was to open at 5 p. m.; closing time was indefinite, but one of the two dining rooms would possibly be open until 2 a. m.

There was some confusion as to what and where off-street parking would be available for Sophia's patrons, although the lease called for 200 spaces to be provided by the landlord without charge.

About 46 members, including the president, of the Citizens Association of Georgetown (intervenor) appeared to protest the issuance of any new licenses to establishments in the area because there are, they claimed, 6,000 liquor service seats within 1,000 feet of the intersection of Wisconsin Avenue and M Street, N.W. They also brought with them a petition containing about 100 signatures of area residents opposing the issuance of a license.

Several of the protestants testified as to the impairment of their use and enjoyment of their residences and environs because of fear of vandalism and personal attacks. They stated that they are unable to park their automobiles on the street because of lack of space, especially since the Cerberus Theatres had recently opened. They stated further that they are disturbed by late hour noise when the present establishments close at night, and that they have less police protection since the police are occupied in the commercial area.

As summarized by the Board: "They feel strongly that the area is already saturated with on-premises licenses and that no further applications should be approved in this commercial area adjacent to a large high-class residential district."

In its Summary, Finding of Fact and Conclusion of Law, the Board noted that it had personally inspected the premises and neighborhood and was impressed by the large amount of money spent on remodeling although no license had yet been granted to Sophia's and although it was well known that such applications for establishments in Georgetown have been opposed in the past. Further, the Board noted that Sophia's "plans appeared to be ill-defined on such vital matters as music, dancing, seating capacity, and parking."

After evaluating all the evidence, the Board found that "[t]he premises do not qualify as appropriate for the license sought in view of the clearly expressed wishes of persons residing and owning property in the neighborhood."[2]

In order to rule on the merits of Sophia's contentions, we must first consider the proper scope of review in cases such as this.

1. *See also* petitioner's brief at 13, where it states that "[t]he fact of the matter is that Sophia's may operate notwithstanding the Board's decision, for a liquor license is not a legal pre-requisite to the conduct of the restaurant business—although an economic necessity for an establishment such as Sophia's."

2. D.C.Code 1967, § 25–115(a) (6) (Supp. III, 1970), provides in pertinent part that "[b]efore a license is issued the Board shall satisfy itself:
    *     *     *     *     *
    6. That the place for which the license is to be issued is an appropriate one considering the character of the premises, its surroundings, and the wishes of the persons residing or owning property in the neighborhood of the premises for which the license is desired."

Four days earlier, the Board had granted a Class "C" license to a much smaller restaurant next door to Sophia's, stating that the former was an appropriate one under this section of the Code. For the facts of that case, see Citizens Ass'n of Georgetown, Inc. v. ABC Bd. of District of Columbia, D.C.App., 268 A.2d 801.

Under the recently enacted District of Columbia Administrative Procedure Act,[3] our review "of all administrative orders and decisions * * * shall be limited to such issues of * * * fact as are subject to review on appeal under applicable statutory law * * *."[4] The applicable statutory law is D.C.Code 1967, § 25–106, which provides, in pertinent part, that "[t]he right, power, and jurisdiction to issue * * * all licenses under this chapter [District of Columbia Alcoholic Beverage Control Act, D.C.Code 1967, § 25–101 et seq.] shall be vested solely in the Board, and the action of the Board on any question of fact shall be final and conclusive * * *."

What this means, we think, is that the findings of the Board can be overturned by this court upon review only if they are without substantial evidence to support them.[5]

In the instant case, we are unpersuaded that there is not substantial evidence to support the Board's finding that Sophia's is an inappropriate place for the issuance of a Class "C" liquor license, considering the express wishes of neighborhood residents and property owners. The fact that the Board granted a license to a restaurant adjacent to Sophia's[6] does not render its denial of a license to the latter arbitrary as a comparison of the facts in both cases will demonstrate. Although the protestants' complaints as to both were the same, the qualifications of the applicants and the character of the restaurants are different. We think the Board's finding that the issuance of a Class "C" license to Le Steak will not significantly add to the neighborhood's problems, while the issuance to Sophia's will, is an informed judgment on matters within its special competence and therefore entitled to great deference by this court.

The order of the Board is affirmed.[7]

Affirmed.

---

3. D.C.Code 1967, § 1–1501 et seq. (Supp. III, 1970).

4. *Id.* § 1–1510. And see D.C.Code 1967, § 17–305(b), which is to the same effect with slight differences in phraseology.

5. *See* 4 Davis, Administrative Law Treatise § 29.07, at 149–52 (1958). *See generally id.* §§ 29.01–29.03, 29.05, 29.06, 29.11.

6. Citizens Ass'n of Georgetown, Inc. v. ABC Bd. of District of Columbia, *supra* note 2.

7. We note that the Board did not consider the applications mutually exclusive as it might have. Pollack v. Simonson, 121 U.S.App.D.C. 362, 350 F.2d 740 (1965).