Charles W. **KLANKE** et al.

v.

William B. **CAMP**, Comptroller of the Currency.

Civ. A. No. 69–H–1033.

United States District Court,
S. D. Texas,
Houston Division.

Oct. 28, 1970.

Joel W. Cook, Schlanger, Cook & Cohn, Houston, Tex., for plaintiff.

Anthony Farris, U. S. Atty., Houston, Tex., William L. Bowers, Jr., Asst. U. S. Atty., for defendant.

SEALS, District Judge.

Plaintiffs applied to the Comptroller of the Currency, in accordance with 12 U.S.C. § 21 *et seq.*, for permission to organize a new national bank. Following the usual investigation, the Comptroller denied the application. He later explained his denial in an affidavit submitted to the court which stated that he

"was convinced, among other reasons, that there was no adequate need for a banking facility at the proposed location; that the ability and experience of the proposed organizers was insufficient; that the requested new bank would not be successful under its proposed leadership; that the objects contemplated by the National Bank Act would not be served; and that the granting of the charter application would be detrimental to the public interest."

Plaintiffs now allege that the Comptroller's denial was "illegal, arbitrary, capricious and unfairly discriminatory" and seek an order compelling the Comptroller either to grant the charter or "to state the terms upon which plaintiff's application will be granted."

The Comptroller contends that his denial of an application for a national bank charter is a matter committed to his discretion by Congress and, consequently, is not subject to judicial review. The authority of the Comptroller to issue and deny charters is derived from 12 U.S.C. §§ 26, 27, in which the Comptroller is charged with the duty to

"examine into the condition of such association, [and] ascertain * * * whether such association has complied with all the provisions of this chapter required to entitle it to engage in the business of banking. * * *" 12 U.S.C. § 26

In the exercise of this duty, the Comptroller is empowered either to grant a certificate or to

"withhold from an association his certificate authorizing the commencement of business, whenever he has reason to suppose that the shareholders have formed the same for any other than the legitimate objects contemplated by this chapter." 12 U.S.C. § 27

A federal appellate court has never dealt with the precise issue before us. The Government contends, however, that the cases of Apfel v. Mellon, 59 App.D.C. 54, 33 F.2d 805 (1929), cert. denied, 280 U.S. 585, 50 S.Ct. 35, 74 L.Ed. 634 and Federal Home Loan Bank Board v. Rowe, 109 U.S.App.D.C. 140, 284 F.2d 274 (1960) provide by analogy authority sufficient to compel this court to decline to review the Comptroller's decision.

In *Apfel*, the plaintiffs complained of the action of the Federal Reserve Board in refusing to authorize organization of a corporation to engage in international banking operations under the Edge Act. The reviewing court declined to disturb "the exercise of the Board's discretion." *Id.*, 33 F.2d at 808. The court added in dictum that

"The statutes relating to the organization of national banks are analogous to those now in question." *Id.*, at 807.

In *Rowe*, the plaintiffs sought to compel the Federal Home Loan Bank Board to grant a charter to a federal savings and loan association. The court found it highly relevant that the authorizing statute fails to mention judicial review:

" * * * Congress has not in the Act provided for judicial review of the Board's order denying an application for permission to organize an association. This omission was no inadvertence, indeed Congress fully intended that the Board possess vast discretion before 'the Board approves the application.'" *Id.*, 284 F.2d at 277–278.

The Government argues essentially that the exceptions to the Administrative Procedure Act, which authorizes judicial review "except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law," preclude review in the instant case, because the clear thrust of judicial development leads to the inescapable conclusion that "agency action is committed to agency discretion by law."

Plaintiffs counter this contention by reference to a series of decisions which allowed limited judicial review on behalf of *competing* banks in cases where the Comptroller had *issued* a charter. Webster Groves Trust Co. v. Saxon, 370 F.2d 381 (8th Cir. 1966), Sterling National Bank of Davie v. Camp, 431 F.2d 514 (5th Cir. 1970). But the Government maintains that, whereas a competitor challenging the granting of a charter is defending a "vested property right," a mere applicant for a charter is seeking only a "government benefit." Such verbal sleight-of-hand together with the view that

" * * * [O]ne of the factors to be considered in determining the reviewability of agency action is the impact of the agency action, and that agency action which merely denies a governmental benefit may more properly be held unreviewable than that which denies a vested property right or which imposes a substantial obligation or burden." Hamel v. Nelson, 226 F. Supp. 96, 99 (N.D.Cal.1963)

would leave plaintiffs without jurisdiction to challenge the action of the Comptroller.

This court, however, is persuaded that both sound reasoning and the current thrust of the law compel a decision for plaintiffs. The recent Supreme Court decision of Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) (hereinafter cited as *Data Processing*) although again presenting a competitor's challenge, offers support for the developing trend in this area and encourages the court not to extend to national bank charters the somewhat analogous principles of *Apfel* and *Rowe*:

> "We find no evidence that Congress in either the Bank Service Corporation Act or the National Bank Act sought to preclude judicial review of administrative rulings by the Comptroller as to the legitimate scope of activities available to national banks under those statutes. Both Acts are clearly 'relevant' statutes within the meaning of § 702. The Acts do not in terms protect a specified group. But their general policy is apparent; and those whose interests are directly affected by a broad or narrow interpretation of the Act are easily identifiable."

*Data Processing, supra,* at 157, 90 S. Ct. at 832.

In reaching this decision, the Court gave substantial weight to the House Report accompanying the Administrative Procedure Act:

> "The statutes of Congress are not merely advisory when they relate to administrative agencies, any more than in other cases. To preclude judicial review under this bill a statute, if not specific in withholding such review, must upon its face give clear and convincing evidence of an intent to withhold it. The mere failure to provide specially by statute for judicial review is certainly no evidence of intent to withhold review." H.R.Rep. No. 1980, 79th Cong., 2d Sess., 41, as

quoted in *Data Processing, id.,* at 156, 90 S.Ct. at 831.

The Government's position, then, is founded, not on the assertion that no action of the Comptroller is judicially reviewable, but that these particular plaintiffs lack standing to complain. This court rejects the obscurantist contention that the mere labeling of an interest as either "vested property right" or as "government benefit" can be a factor of controlling significance. The economic injury plaintiffs will suffer from being totally barred from operating a national bank is undoubtedly greater than the loss contemplated by complaining competitors. On the other hand, a competing bank has no constitutionally protected right to preclude all competition, but only that competition which arises as a result of the Comptroller's abuse of his discretion.

Indeed, the single significant distinction between applicant and competitor is that the latter, at the time of complaint, has attained the status of "national Bank" with its attendant prestige, whereas the applicant is a mere hopeful. Leaving aside possible inferences of discrimination based on economic power, this court cannot sanction the use of definitional legerdemain to obtain a result supported neither by clear reasoning nor fundamental fairness.

In addition, the court finds consolation in the Supreme Court's observation in *Data Processing* that

> "Where statutes are concerned, the trend is toward enlargement of the class of people who may protest administrative action." *Id.,* at 154, 90 S.Ct. at 830.

■ Finally, we are persuaded by the consideration that, to deny every possibility of judicial review in this situation is to vest the Comptroller with virtually unbridled authority. Such unlimited discretion is the cornerstone of authoritarian rule. But it is inconsistent with our form of government, and it will not be inferred absent a clear and forthright manifestation of congressional in-

tent. The Eight Circuit has explicitly upheld this position:

"The Comptroller, however, must be subordinate to the law from which he received his authority, and is subject to the limitations imposed by that law. Therefore, if he acts in excess of his statutory grant of power, acts arbitrarily or capriciously, abuses his discretion, or unlawfully discriminates in violation of the Constitution, he is certainly subject to restraint by the courts. Though he may exercise the discretion the expertise of his office affords him, the congressional grant of authority does not empower arbitrary and capricious action, nor does it contemplate abuses of that discretion. Therefore, we do not believe the courts are powerless to protect the public from unconstitutional, illegal, or otherwise arbitrary activities of administrative officials. The Comptroller is free to exercise his discretion in the granting of charters, free from any review on the merits of his action. However, if the Comptroller acts in excess or abuse of his legal authority, to this extent his actions are subject to judicial review, with the burden of proof resting on the party seeking the review. * * *" Webster Groves Trust Co. v. Saxon, *id.*, 370 F.2d at 387.

We hold therefore that this court has jurisdiction to consider the challenge of the Comptroller's denial of plaintiffs' charter application, and that these plaintiffs are within that class of persons whose interest is sufficient to give them standing to sue. But plaintiffs may have gained a hollow victory. For their success depends on a clear showing that the Comptroller exercised his discretion "in excess of his statutory grant of power, acted arbitrarily or capriciously, abused his discretion, or unlawfully discriminated in violation of the constitution. * * *" Webster Groves Trust Co. v. Saxon, *supra,* at 387.

Plaintiffs' burden is a heavy one, and they must discharge it without the assistance of many of the vital tools of federal discovery. Plaintiffs may not depose the Comptroller nor require him to answer interrogatories. United States v. Morgan, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941), Warren Bank v. Camp, 396 F.2d 52, 56 (6th Cir. 1968). Accordingly, plaintiffs must rely almost exclusively upon the Comptroller's letters denying their application and upon the affidavits submitted by the Comptroller. In addition, they may obtain the Comptroller's file in this cause. From this relative paucity of evidence, plaintiffs must convince the court that the Comptroller's action was arbitrary and capricious.

Such a test will best protect both the frustrated applicant and the Comptroller as well. An applicant who is the victim of sheer arbitrariness, invidious discrimination, or blatant prejudice should be able to demonstrate the legitimacy of his grievance even without extensive discovery devices. On the other hand, the Comptroller is insulated from judicial interference merely upon evidencing a minimal basis in reason for his denial. The heavy burden of proof facing potential complainants should help protect the Comptroller from harassment suits by applicants whose sense of outrage exceeds the merits of their claim. This approach offers the further advantage of avoiding the kind of universal categorization, like "political thicket" and the incorporation theory, that often leads a court into a series of progressively embarrassing situations —where hard cases make bad law— until the exceptions finally swallow the rule.

It is therefore ORDERED that plaintiffs be granted an additional thirty days from the date of this order in which they may submit to the court clear and convincing evidence that the Comptroller has abused his statutory authority in denying plaintiffs' charter application. The Comptroller is further to release to plaintiffs, upon demand, all Government records pertaining to the denial of plaintiffs' charter application. This

cause is retained on the docket of the court pending expiration of such thirty days period.

The Clerk will file this Memorandum and Order and provide counsel with true copies.