**CITIZENS ASSOCIATION OF GEORGE-TOWN, INC., Petitioner,**

**v.**

**DISTRICT OF COLUMBIA ALCOHOLIC BEVERAGE CONTROL BOARD, Respondent.**

**La Maison du Steak, Inc., t/a Le Steak, Intervenor.**

**No. 5672.**

District of Columbia Court of Appeals.

Argued June 14, 1971.

Decided Aug. 2, 1971.

Christopher W. Keller, with whom Courts Oulahan, Washington, D. C., was on the brief, for petitioner.

Ted D. Kuemmerling, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for respondent.

Steven John Fellman, Washington, D. C., with whom William H. Howe, Washington, D. C., was on the brief, for intervenor.

Before NEBEKER and REILLY, Associate Judges, and MYERS (Associate Judge, Retired).

REILLY, Associate Judge:

A petition for review[1] filed by the Citizens Association of Georgetown, Inc. asks this court to set aside an order of the Alcoholic Beverage Control Board (referred to herein as "the Board") reissuing a Class "C" liquor license to a restaurant known as Le Steak at 3060 M Street, N. W., owned and operated by La Maison du Steak, Inc.

This particular restaurant was opened at the same premises in March, 1970, at which time it was granted its original license by the Board. In affirming the issuance of that license over the objection of the Association, this court described the operation of Le Steak as follows:

> At the hearing before the Board, Le Steak's owner testified that she and her two children live above Le Steak, which is located on M Street, N. W., in Georgetown. Five years ago she created and today still owns a very successful restaurant in New York. Le Steak in Washington is patterned after this restaurant in New York where the menu offers only a special steak, salad, and a choice of desserts. Le Steak's owner's experience in New York has been that 75 percent of her income derives from food sales. The restaurant seats 61 persons, including six at a "service bar." The kitchen is open from 5:30 p. m. to 10:30 p. m., and the restaurant closes at about 12 p. m. The cost of a meal per person, including tip, averages about $10 or $12. There is no music or entertainment. Valet parking for its customers is to be provided in the parking spaces of neighboring stores which are not open at night. Le Steak's

lease is not contingent upon its being granted a liquor license and is already in operation.[2]

2. Citizens Association of Georgetown, Inc. v. Alcoholic Beverage Control Board, D.C.App., 268 A.2d 801, 802 (1970).

A year ago when opposition to the issuance of the first license was voiced by residents of Georgetown and their association, it was on the generalized ground that so many licenses had been granted to clubs and eating places in the vicinity of the intersection of M Street and Wisconsin Avenue that the contiguous neighborhood was already suffering from noise, vandalism, excessive traffic, and illegal parking, and that the addition of more liquor dispensing places in the immediate area would increase this burden of discomfort.[3] In granting the license, however, the Board concluded that the character of the new restaurant was such that it was "unlikely to contribute significantly to the problems of which the Georgetowners complain".

One of the several factors noted by the Board in reaching this conclusion was that the applicant had stated that parking spaces would be available at night in the rear of the premises and that valet parking services would be provided for customers. At the hearing on license reissuance, it developed that valet parking had been discontinued for lack of demand but that the same number of free parking spaces were still available to patrons as a result of arrangements with adjacent shops which were closed in the evenings.

Discontinuance of valet service is the sole ground urged by petitioner for vacating the renewal of the license. The Association contends that in the absence of a parking attendant, less than half the 20 parking spaces reserved for customers could be effectively used and therefore urges that the

1. D.C.Code 1967, § 1–1510 (Supp. IV, 1971).

3. For a fuller description of the grievances of the residents, see the opinion of this court in Sophia's Inc. v. Alcoholic Beverage Control Board, 268 A.2d 799, 800 (1970).

Board erred in not conditioning the grant of the new license upon the restoration of such service. Counsel for the Board argues that both conditional licensing or denial of license grounded on absence of off-street parking facilities are beyond the scope of the Board's powers. Geer v. Presto, 135 Colo. 536, 313 P.2d 980 (1957).

The record in this case does not compel us to reach either of these questions. It is well established that on judicial review the findings of the Board should stand "unless unsupported by substantial evidence".[4] Sophia's Incorporated v. Alcoholic Beverage Control Board, D.C.App., 268 A.2d 799, 801 (1970). Here the Board found that no evidence was introduced to contradict licensee's testimony of there being 20 parking spaces behind the building which can be used by customers, that no complaints had ever been received with respect to the adequacy of such facilities, and there was not enough business to justify keeping an employee for the purpose of parking customer cars. In our opinion this testimony satisfies the statutory test of "substantial evidence", and the Board's ultimate conclusion is within the scope of its statutory discretion.[5]

Affirmed.

4. D.C.Code 1967, § 1–1510 (Supp. IV, 1971).

5. D.C.Code 1967, § 25–106.