MINERS & MERCHANTS BANK, a Montana Banking Corporation, Plaintiff and Appellant, v. JOHN A. DOWDALL, State Superintendent of Banks et al., Defendants and Respondents.

No. 12107.
Submitted September 1, 1971.
Order September 2, 1971.
Opinion October 18, 1971.
489 P.2d 1274.

MR. CHIEF JUSTICE JAMES T. HARRISON dissented and filed Opinion in which MR. JUSTICE CASTLES concurred.

Thomas E. Towe, argued, Billings, for plaintiff and appellant.

Robert L. Woodahl, Atty. Gen., Helena, John P. Connor, Jr., argued, Asst. Atty. Gen., Helena, Lawrence D. Huss, appeared, Asst. Atty. Gen., Helena, Sandall, Moses & Cavan, Billings,

Charles F. Moses, argued, Billings, Roy C. Rodeghiero, appeared, Roundup, for defendants and respondents.

## ORDER

### PER CURIAM:

This is an appeal by plaintiff from a judgment entered in this cause on August 6, 1971, which judgment denied plaintiff's motion for preliminary injunction and also its motion to amend the complaint, and granted defendants' motion for summary judgment.

In our view the judgment entered in the district court is correct and should be and is hereby affirmed. Written opinion follows.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICE CASTLES.

It is our view that the plaintiff was entitled to be heard and for that reason we dissent.

## OPINION

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This is an action by plaintiff bank seeking declaratory, extraordinary or injunctive relief against the state superintendent of banks in connection with the proposed chartering of a second bank in Roundup, Montana. The District Court entered summary judgment against plaintiff bank and denied its motion for a preliminary injunction. Plaintiff bank now appeals from this judgment and order.

Plaintiff and appellant is Miners and Merchants Bank, a Montana banking corporation, which operates the only existing bank in Roundup, Montana. Defendants are John A. Dowdall, the state superintendent of banks; and four individuals, William Bianchi, Otto Stensvad, Gerald Kaufmann and Roy Rodeghiero who seek to charter a second bank in Roundup. These latter four defendants hereafter will be called the proponents.

On April 15, 1970, proponents applied to the state superintendent of banks for a charter to establish a new bank in the City of Roundup. The superintendent of banks thereupon conducted a thorough examination of the application and made inquiry within the community to determine whether the public convenience and advantage would be promoted by the opening of the proposed bank. During this process two officials of plaintiff bank were interviewed and plaintiff bank was afforded the opportunity to and did submit a detailed written protest in which it indicated its reasons for contesting the application.

On June 15, 1970 the state superintendent of banks denied the application of proponents to charter the proposed new bank. Thereafter proponents requested the superintendent of banks to reconsider his decision indicating they had additional evidence they wished to present. The state superintendent of banks agreed to reconsider indicating that the proponents ''would have to come up with something concrete and definite on anything new that would be developing in Roundup.''

Thereafter the state superintendent of banks received additional information from the proponents and from various people he called to substantiate. This evidence and information related to the economic condition in Roundup and its neighboring area. On June 30 plaintiff bank sent a letter to the superintendent of banks requesting that in the event he decided to reconsider that they would like an opportunity to hear whatever new evidence was presented.

On August 5 the superintendent of banks issued a letter of conditional approval of a charter for a new bank setting forth certain conditions which must be met. These conditions included acceptance of the new bank for insurance of deposits by the Federal Deposit Insurance Corporation, requirements as to capital structure of the new bank, management, payment of dividends, amount of fixed assets and others.

Thereafter plaintiff bank requested the superintendent of banks to reconsider his decision to grant this conditional charter

and to hold a hearing or in some other manner make the additional information available for analysis and response by plaintiff bank. This request was denied by the superintendent of banks on the basis that such information was of a very confidential nature.

On October 6, 1970 plaintiff bank filed its complaint in the District Court of Lewis and Clark County seeking the following relief in the alternative: (1) That the superintendent of banks be enjoined from granting final approval to the chartering of the new bank until a hearing was held; (2) For a declaratory judgment that the superintendent of banks cannot act on the charter application on the basis of confidential information, that plaintiff bank has a right to hear and rebut such information, and that plaintiff bank is entitled to a hearing; (3) For an extraordinary or remedial writ prohibiting the superintendent of banks from issuing final approval of the charter for the new bank until a hearing is held or the confidential information revealed or directing the superintendent of banks to hold such hearing.

Defendants filed their answer on January 5, 1971 containing three basic defenses: (1) Failure of plaintiff to state a claim in that no hearing for the granting of a bank charter is required. (2) The action set forth in the complaint is not adversary in character as no actual controversy exists between the parties. (3) A general denial of essentials of plaintiff's complaint coupled with certain admissions of fact.

The deposition of the superintendent of banks was taken on March 22, 1971 at which time he again refused to divulge the specific information or his sources which led to his granting of conditional approval of the charter of the new bank following his original denial. Thereafter the attorney general, as counsel for the state superintendent of banks, sought a court order "limiting the scope of the deposition examination so that the superintendent of banks will not be required to answer the questions concerning confidential information on economic activity

in the Roundup area." On March 30, 1971 the district court granted this motion.

On May 12 the deposition of William D. Bianchi, a defendant, proponent, and the prospective managing officer of the new bank, was taken.

On July 23 defendants moved for summary judgment in their favor. Thereafter plaintiff bank moved (1) for leave to file an amended complaint, and (2) for a preliminary injunction enjoining the superintendent of banks from issuing a final certificate of authorization for the new bank and enjoining proponents from commencing banking operations during the pendency of the district court action. All motions were heard by the district court on August 4. On August 5, 1971 the district court entered an order granting defendants' motion for summary judgment, denying plaintiff bank's motion for a preliminary injunction, and denying plaintiff bank's motion for leave to file an amended complaint.

On August 6 judgment was entered (1) granting summary judgment to defendants, (2) declaring that pursuant to section 5-202, R.C.M.1947, the state superintendent of banks is not required to reveal confidential information received during the course of his investigation of an application for a bank charter, (3) declaring that pursuant to sections 5-202 and 5-1012, R.C.M. 1947, the state superintendent of banks is not required to reveal confidential information received during the course of his investigation of an application for a bank charter, and (4) that the state superintendent of banks did not abuse his discretion in granting the new bank charter.

Plaintiff bank now appeals from this judgment and from the district court's denial of its motion for a preliminary injunction.

The ultimate issue upon appeal is whether summary judgment was properly granted. Underlying this issue are three subsidiary questions: (1) Does the record disclose a procedural defect precluding summary judgment consisting of the superintendent's decision based on undisclosed confidential information

that plaintiff bank had no opportunity to examine or answer? (2) Does the record contain any evidence supporting the superintendent's decision? (3) Does the record show the existence of any genuine issue of material fact precluding summary judgment.

At the outset we note that during oral argument of this appeal plaintiff bank moved to strike from the files and records of this case an affidavit of the superintendent of banks and a supporting exhibit. This affidavit was dated August 26, 1971, and purported to be a summary of the deposition testimony of the superintendent but included additional information not contained in his deposition; the supporting exhibit was an area manpower survey of Musselshell County, Montana by the State Employment Security Commission. These documents were filed with this Court on August 27, as an appendix to the brief of the attorney general.

We grant the motion of plaintiff bank to strike this affidavit and supporting exhibit. It is not entitled to consideration in this appeal for at least two reasons. In the first place, this affidavit and supporting document were not before the district court at the time of its entry of judgment and order from which this appeal was taken. Secondly, the use of affidavits in connection with motions for summary judgment is expressly prohibited by Rule 56, M.R.Civ.P.

Before proceeding to discussion of the issues upon appeal it is well to review exactly what confidential information was withheld and what information was disclosed by the superintendent as the various issues for review upon appeal must be considered and determined in the context of the facts of this case. It is conceded that the information withheld from plaintiff bank concerned the general subject of whether "public convenience and advantage will be promoted by the opening of such [new] bank," one factor required to be determined by the superintendent of banks acting upon a charter application. Section 5-202, R.C.M.1947. The deposition of the superintendent discloses that the nature of the confidential information he re-

fused to reveal on this subject related to the economic condition of Roundup and the neighboring area. Specifically he refused to divulge (1) information derived from bank audits and examinations by his department of other banks having depositors from the Roundup area, which information he used in estimating the amount of deposits a new bank could generate; (2) information concerning specific plans of individual businesses relating to their proposed economic activity in the community; and (3) information concerning how well the existing bank was serving the community.

The information that the superintendent did disclose consisted of (1) the written report of his deputy from his two-day investigation of the Roundup area with supporting statistical data including previous years' figures on electricity, water and telephone users, school census figures, taxable valuation of property, revenues and similar matters; (2) sources of "bright spots" in the economy; sale of small home sites; recent home construction; businesses such as Reforestation, Inc. and Consolidated Coal Co.; and (3) the criteria and method used by the superintendent in evaluating whether "the public convenience and advantage will be promoted by the opening of such [new] bank."

It should be noted that the initial decision of the superintendent of banks was denial of the charter application. The superintendent's letter of denial and his testimony upon deposition indicate this was a borderline case and that if the proposed businesses and industrial projects within the community would result in specific and significant improvements in economic and population factors in the near future, an application a year in the future would warrant more favorable consideration.

Following charter denial, proponents requested reconsideration and consulted with the superintendent of banks accordingly. The superintendent testified upon deposition concerning events subsequent to his letter of denial:

"Q. Okay. Now Mr. Dowdall, subsequent to that time, what

next took place in regard to this application? A. Well, when I refused the application, I was asked to reconsider by the proponents; that they had additional information which they wished to present; and I told them that if it didn't have any bearing on the economy of the town that I couldn't see any sense in reconsidering till they had something definite, and they said they would attempt to get some definite information in a thirty-day period. So I reconsidered the application for thirty days * * *."

And later in this same deposition:

"Q. And it was in your office that you indicated that you would reconsider more evidence? A. After the discussion. This is—at this time is when I told them that they would have to come up with something concrete and definite on anything new that would be developing in Roundup and I think that was shortly after June the 15th."

By letter dated June 30, the attorney for plaintiff bank wrote the superintendent of banks "requesting that in the event you decide to reconsider that the bank would like an opportunity to hear whatever new evidence is presented."

Thereafter additional information was furnished to the superintendent that he felt was confidential information that had been received by the proponents, various people and he didn't feel that it was public knowledge. The information was received by a letter and by a telephone call, "one of the individuals that supplied some confidential information I called to substantiate."

The superintendent of banks testified in his deposition concerning the basis of his reconsideration and change of decision granting conditional approval of the charter application:

"Q. [By Mr. Towe) [attorney for plaintiff bank] Now, Mr. Dowdall, on what fact did you base your reconsideration and the change in your decision? A. On the facts that were contained in this additional information provided to me by the proponents * * *.

Q. Did this evidence and information relate to the economic condition in Roundup and the neighboring area? A. Yes.

"Q. And, Mr. Dowdall, was anything else presented to you or your office between June 15th, the date you denied the application, and August 5th, the date that you granted or sent a letter granting conditional approval? A. Nothing other than what we have deemed confidential.

"Q. Were there any other telephone calls or any other communications from persons other than the applicants? A. Yes."

And later in his deposition, the superintendent testified:

"Q. So then based on the new encouraging economic information you received and then all of the other factors, then did you grant the conditional bank charter? A. Yes."

The deposition of the superintendent clearly indicates that his reconsidered decision was based upon all information developed by him, both prior and subsequent to his original denial of the application. It also indicates that his original denial was a difficult and marginal decision and that the confidential information he received following his original denial was sufficient in his judgment to tip the scales in favor of granting the application. It is equally clear that this additional information related to economic conditions in the Roundup area and specifically to particular plans of individual businesses that would affect the economy.

With this factual background we proceed to discussion of the issues for review upon appeal. On the first issue, plaintiff bank contends that the superintendent's decision was based on undisclosed confidential information which plaintiff bank had no opportunity to examine and answer; and that this constitutes a procedural defect on the face of the record precluding summary judgment. In support of this position plaintiff bank argues that it is entitled to an adversary, trial-type hearing with an opportunity to examine and cross-examine witnesses, including the superintendent of banks. It further argues that at the very least it is entitled to compel disclosure of the confidential information and have an opportunity to answer it.

We note initially that neither section 5-202, R.C.M.1947, relating to the duties of the superintendent of banks in determin-

ing whether a charter application should be granted, nor any other statute, provides for a hearing of any kind. Accordingly, there is no statutory right to a hearing.

However plaintiff bank contends that "administrative due process" requires an adversary, trial-type hearing before the superintendent with the right of confrontation, examination, cross-examination, and disclosure of confidential information imparted to the superintendent and used by him in his determination of a bank charter application. While there are no prior decisions by this Court on this point, there are a number of federal court decisions in analogous cases that furnish guidance, if not controlling precedent. These federal cases relate to the constitutional requirements of "administrative due process" in determinations by the comptroller of currency of national bank charter applications.

In Webster Groves Trust Company v. Saxon (C.C.A. 8, 1966), 370 F.2d 381, an action by established banks seeking a declaratory judgment and injunction to overturn approval of a charter for a new bank by the comptroller of currency, the U. S. Circuit Court of Appeals held at page 384:

"We believe that competing banks, as interested parties, have a right to challenge illegal acts of the Comptroller and that the Comptroller's discretionary actions are not immunized from judicial review, but we also believe that neither the National Banking Act, 12 U.S.C. § 21 et seq., the Administrative Procedure Act, nor procedural due process requires a formal hearing of the type sought by appellant."

And in Citizens Bank of Hattiesburg v. Camp (C.C.A. 5, 1967), 387 F.2d 375, an action by an existing bank seeking a declaratory judgment that approval by the comptroller of currency of a charter for a new bank was unlawful, the United States Court of Appeals ruled that the comptroller is not required to hold a formal adversary hearing in determining approval of a charter of a new national bank. To the same effect see Citizens National Bank of Maplewood v. Saxon (E.D.Mo., 1965), 249 F.Supp. 557. We are aware of no federal court

holding, and counsel has cited none, that "administrative due process" requires a formal, adversary, trial-type hearing of the kind sought by plaintiff bank here.

We note that plaintiff bank seeks to distinguish these federal cases and render them inapplicable to the present controversy on the basis that the duties of the comptroller of currency in determining a national bank charter application do not include a determination of "public convenience and advantage" which is required of the superintendent of banks in state bank charter applications in Montana. While it is true that the federal statute does not expressly require this determination, it is equally true that this is a factor to be considered by the comptroller of currency nonetheless. In First National Bank of Smithfield, North Carolina v. Saxon (C.C.A. 4, 1965), 352 F.2d 267, the United States Court of Appeals indicated that "the public interest, need and necessity" for a new bank are factors to be considered by the comptroller in determining his approval or disapproval of a branch bank application. We see no substantial difference in the instant case. Nor will we indulge in the implication that Congress intended the comptroller to blind himself to public need, necessity and advantage in determining national bank charter applications.

We hold, therefore, that neither Montana statutes nor "administrative due process" under federal or state constitutional provisions require an adversary, trial-type hearing before the superintendent of banks prior to determination of a state bank charter application.

Plaintiff bank goes on to contend, however, that even if an adversary, trial-type hearing is not required, plaintiff bank is at least entitled to compel disclosure of the confidential information, have an opportunity to examine and analyze it, and then have an opportunity to rebut or answer it.

The Montana statute preserving confidentiality of this information is section 5-1012, R.C.M.1947, which provides:

"*Information obtained by state examiner to be deemed confidential—penalty for the violation thereof:* Any knowledge or

information gained or discovered by the state superintendent of banks, in pursuance of his powers or duties as herein prescribed, shall be deemed confidential information of the state examiner's office only, and such information shall not, except as herein provided, be imparted to any person or persons who are not officially associated in and with the office of the state examiner, and such information shall be used by the state examiner only in the furtherance of his official duties, except that it shall be lawful for the department to exchange information with the federal banking department and departments of other states and to furnish information to prosecuting officials who require the same for use in pursuit of official duties. Any state examiner or deputy, assistant, or clerk in his employ, who violates any of the provisions of this section, or wilfully makes a false official report as to the condition of any bank, shall be removed from office, and shall also be deemed guilty of a felony, and upon conviction thereof shall be punished by a fine of not exceeding one thousand dollars ($1,000.00), or by imprisonment in the state penitentiary for not exceeding five (5) years, or by both such fine and imprisonment.''

The crux of the matter is whether the phrase ''in pursuance of his powers or duties as herein prescribed'' refers only to the superintendent's powers and duties of supervision and regulation of existing banks, as contended by plaintiff bank, or whether it includes the superintendent's powers and duties in determining bank charter applications as well.

We note that section 5-1012, R.C.M.1947 was originally enacted as Section 85, Ch. 89, 1927 Session Laws. This entire chapter was designated as the ''Bank Act'' and constituted a comprehensive revision and codification of Montana banking laws. It provided for the incorporation and regulation of state banks, created a state banking department, prescribed the duties of the state superintendent of banks, and generally provided a system of supervision and regulation of banks. Among other things, it provided for determination of bank charter applications by the superintendent of banks. It contained two sections

relating to confidentiality of information secured by the superintendent, section 65 specifically relating to information secured from bank examinations, audits and reports, and section 85 relating to "any knowledge or information gained or discovered by the state superintendent of banks, in pursuance of his powers or duties as herein prescribed." Both sections 65 and 85 of the original act have been retained in the present law. Well known principles of statutory construction require that both sections be given effect, if possible. Accordingly, we interpret section 85, now section 5-1012, to require confidentiality of information secured in determination of bank charter applications rather than confining it to information required in the supervision, auditing and examination of existing banks which would render it a meaningless duplicate of section 65, now section 5-705, R.C.M. 1947.

Finding as we have that the Montana statute requires confidentiality of this information and also provides criminal penalties for violation thereof, it is apparent that such statute constitutes a legislative determination of public policy of this state on the basis of conflicting interests. Neither the wisdom of this statute nor the policy determination behind it are subject to judicial review. It is apparent that its purpose is to insure the securing of necessary and pertinent information by the superintendent of banks in discharge of his official duties and that such purpose is reasonable.

In the face of a statute requiring confidentiality of the information imparted to the superintendent and making disclosure thereof a felony, it follows that a competitor bank cannot compel disclosure of such confidential information by the superintendent by judicial proceedings or otherwise.

Nor does "administrative due process" require a disclosure of confidential ex parte information from charter applicants which was received and considered by the superintendent of banks. A situation analogous to the present case was presented to the United States Court of Appeals in Sterling National Bank of Davie v. Camp (C.C.A. 5, 1970), 431 F.2d 514. In that case an

existing national bank sought to have a preliminary charter approval for a new national bank by the comptroller of currency set aside. In granting summary judgment upholding the comptroller's determination, the court specifically held that the comptroller was entitled to receive and consider confidential ex parte information by charter applicants in arriving at his determination and also that the comptroller need not make a written opinion stating his reasons for granting a charter application. The court pointed out that where confidentiality was the controlling consideration, it made no difference which way the confidential information became public, the same undesirable results would follow disclosure.

Plaintiff bank seeks to distinguish *Sterling National Bank of Davie* from the present case on the basis that there the information before the comptroller of currency would justify either the granting or disapproval of the proposed bank charter, while here the sole basis for the superintendent's conditional approval was confidential information. This is an oversimplification and somewhat misleading. While it is true that confidential information was sufficient to tip the scales in favor of granting conditional approval to the charter here, it is equally true that the determination was based on all information secured and not simply on the confidential information. Here complete disclosure of all information not made confidential by statute was made to plaintiff bank, withholding only information secured from bank audits of existing banks, specific plans of individual businesses in the community for economic expansion, and information derived from private individuals in confidence relating to the way the existing bank was serving the community. The reasons for withholding this confidential information are obvious and reasonable. In the case of these facts, we cannot say that the superintendent of banks unconstitutionally applied the statute under the circumstances of this case.

Plaintiff bank also complains that it has not been given its constitutional "right to be heard." The facts indicate otherwise. In his investigation of the charter application the superin-

tendent of banks interviewed two officers of plaintiff competing bank and gave them an opportunity to state their views. Thereafter plaintiff bank was given an opportunity to and did present a detailed written protest opposing the charter application. Subsequently in the district court hearing on motion for summary judgment, plaintiff bank had an opportunity to present whatever evidence it desired in opposing proponent's charter application. The facts simply do not square with plaintiff's contention that it was denied the "right to be heard."

Accordingly we hold that there has been no procedural defect precluding summary judgment in violation of statute or "due process" guarantees in the state and federal constitutions in the instant case.

The second issue for review upon appeal concerns whether the record contains any evidence to support the superintendent's decision thereby permitting summary judgment to be granted. Plaintiff bank contends there is no such evidence.

We consider this contention to be without merit. In the first place, Montana law provides a statutory presumption that official duty has been regularly performed, and such presumption is satisfactory proof of the fact, if uncontradicted. Section 93-1301-7, subsection 15, R.C.M.1947. Persons objecting to a statutory determination by a public official charged with the duty of determining bank charter applications have a heavy burden of proof in proceedings to overturn his decision, Klanke v. Camp (D.C.Texas, 1970), 320 F.Supp. 1185, and such objectors have the burden of overcoming the presumption of reasonableness and lawfulness that attaches to his actions, Elizabeth Federal S. & L. Assn. v. Howell (1957), 24 N.J. 488, 132 A.2d 779.

But there is considerably more in the record of this case than merely a statutory presumption. Reading the record as a whole it shows that the superintendent of banks caused a thorough investigation of the bank charter application to be made by his office as required by law, secured the opposing views of plaintiff

competing bank and such evidence as plaintiff saw fit to present to him, took all evidence so secured together with all other evidence germane to the application of which the superintendent had knowledge, considered the same, and made a judgment determination that conditional approval of the bank charter application should be granted. The conditions imposed were later made more stringent than originally to further insure the successful operation of the new bank. These facts indicate a lawful exercise of the discretion vested in the superintendent by law and negate arbitrary or capricious action on his part. There is simply nothing to show that he did not exercise his discretion in a lawful manner.

The final issue for review is whether the record discloses the existence of any genuine issue of material fact precluding summary judgment.

We note initially that the statutory discretion to make the determination on whether to issue a charter to a state bank is vested in the superintendent of banks. To achieve perspective we observe that the superintendent's decision in regard to a charter application for a state bank is final and binding, absent arbitrary or capricious action on his part amounting to an unlawful exercise of that discretion. The scope of judicial review of the superintendent's determination is so limited. Accordingly, the question before the Court upon appeal, is not whether this Court would have arrived at the same decision as that of the superintendent of banks in regard to this charter application, but only whether the superintendent's determination was arbitrary of capricious amounting to an unlawful exercise of the discretion reposed in him by statute.

Applied to the facts of this case, the issue is whether the superintendent acted arbitrarily and capriciously in determining that the ''public convenience and advantage'' would be promoted by granting the charter application for the new bank.

Admittedly there are facts both in support of and in opposition to the granting of this charter. On the basis of these op-

posing facts, the superintendent made his decision to grant conditional approval to the charter application. This was based on many factors: his interview of two officers of the existing bank and the securing of their views; consideration of the written objections of the existing bank; consideration of economic factors—population, existing economic activity, economic prospects, and financial considerations bearing upon the successful operation of a new bank.

The superintendent considered that the existing bank was substantially "loaned up," couldn't loan out any more, and the need of the community for a source of additional loans. The superintendent also considered four different petitions from persons in the Roundup area containing 112, 58, 64 and 51 signatures respectively, supporting the charter application and indicating they would support a new banking facility. He considered criticism of some of the economic policies of the existing bank obtained in previous examinations and audits by his department and contained in previous audit reports furnished plaintiff bank. In short, there is nothing to indicate that he acted arbitrarily, capriciously, or in the unlawful exercise of his discretion.

Here the burden of proof was on plaintiff bank to show the existence of a genuine issue of material fact indicating that the superintendent acted arbitrarily, capriciously, or in the unlawful exercise of his discretion. It is not enough simply to show that there ore other facts supporting a contrary determination by the superintendent. A party opposing the entry of summary judgment against it cannot "lie in the weeds," point an accusing finger at the superintendent, cry "wolf," and successfully resist summary judgment. Such party must produce evidence indicating the existence of a genuine issue of material fact concerning arbitrary, capricious, or unlawful action by the superintendent. Plaintiff bank has produced no such evidence here.

160

For the foregoing reasons the judgment of the district court is affirmed.

MR. JUSTICES JOHN C. HARRISON, and DALY, concur.

MR. CHIEF JUSTICE JAMES T. HARRISON (dissenting).

I dissent.

I feel that the plaintiff has not had a fair opportunity to be heard. The superintendent of banks met plaintiff's requests for knowledge of the additional information which resulted in his changing his mind from a denial of the charter for the proposed bank to one of conditionally granting it with the statement that such information was of a very confidential nature. Plaintiff did not seek knowledge of confidential matters, all it wanted was that the superintendent of banks either hold a hearing or in some manner give it general knowledge of the additional information for its analysis and response.

I note that the attorney general in seeking a limitation of the deposition examination referred to ''economic activity in the Roundup area.''

For some time there has been a constant effort on the part of bureaus to call many of their activities ''classified'' and therefore not open to public inspection. Hardly a day passes without mention in the public press of efforts by members of the news media to investigate certain activities, only to be refused access because the matter is designated ''classified,'' ''privileged'' or ''confidential.''

Back in 1963 the matter of secrecy by public officers was under consideration by the legislature and they enacted what is now section 82-3401, R.C.M.1947, and which reads:

''The legislature finds and declares that public boards, commissions, councils, and other public agencies in this state exist to aid in the conduct of the peoples' business. It is the intent of this act that actions and deliberations of all public agencies shall be conducted openly. The people of the state do not wish to abdicate their sovereignty to the agencies which serve them.

Towards these ends, the provisions of the act shall be liberally construed."

So reads the first section of the popularly known "Open Meetings Law." The second section provides that all meetings of public or governmental bodies, boards, bureaus, commissions or agencies of the state should be open to the public, except as otherwise specifically provided by law, and except any meeting involving or affecting matters such as state security, discipline of employees, personnel matters, purchase of public property, revocation of licenses and law enforcement. I appreciate that the superintendent of banks seeks refuge for his actions in certain statutes as set forth in the majority opinion.

I do not follow the reasoning of the majority as to the intent of these statutes because section 5-202, R.C.M.1947, provides that the superintendent shall determine, among other things, "* * * whether the public convenience and advantage will be promoted by the opening of such bank * * *." The majority insist that section 5-1012, R.C.M.1947, which they quote, makes all information gained or discovered by the superintendent to be confidential and attach no significance to the preceding code section 5-1011, R.C.M.1947, which provides for examination of private banks doing business in the state by the superintendent and grants him power to examine all the books, papers, and effects of such bank for the purpose of ascertaining its financial condition.

To my mind section 5-1012 refers to the actions provided for in section 5-1011 and should not be considered a general holding that all acts of the superintendent are to be deemed confidential.

The majority also holds that this must be so or section 5-705, R.C.M.1947, would be a meaningless duplication of section 5-1012. With this I cannot agree. Section 5-705 is preceded by section 5-704 which provides that the superintendent may call for reports at least three times a year. Then section 5-705, commences:

"The report and any information contained in the reports

and statements hereinabove provided for, other than such reports as are required to be published, shall be deemed to be secret and for the confidential information of the superintendent of banks only   *   *   *.''

There is no meaningless duplication between section 5-705, dealing with confidential reports from private banks, and section 5-1012 which deals with the examination of private banks and the information contained in its books, papers and effects.

There was a time in Montana when every hamlet had a bank and as one travels about the state now the only brick building in our many ghost towns is that of a defunct bank. Following the closure of their pioneer banks, many competing for the sparse banking business in a small community, came a period of stability and soundness in banking. One cannot help but note the many new banks that are springing up around Montana and become fearful that history may be getting ready to repeat itself.

This brings me again face to face with the question: Does the opening of another bank in Roundup promote the convenience and advantage of that community? Judging from the record in this cause I cannot say that in my opinion it does. But the majority hold that opinions, other than those of the superintendent of banks, have no standing. To put a matter of grave concern to the economy of a community into the hands of one man and permit him to deny access to the basis for his action on the ground it is confidential is, in my opinion, establishing a dangerous precedent.

MR. JUSTICE CASTLES concurs in the dissent of the Chief Justice.